COOPER-JARRETT, INC., APPELLANT, *v.* PORTERFIELD, TAX COMMR., APPELLEE.

[Cite as Cooper-Jarrett v. Porterfield, Tax Commr., 15 Ohio St. 2d 54.]

(No. 41334—Decided June 19, 1968.)

*Messrs. Falsgraf, Kundtz, Reidy & Shoup, Mr. Oliver E. Seikel* and *Mr. John Wilharm, Jr.*, for appellant.

*Mr. William B. Saxbe*, attorney general, and *Mr. Jon Ziegler*, for appellee.

SCHNEIDER, J. Ohio exacts a franchise tax equally against all corporations, both foreign and domestic, operating within its borders, upon three alternative occasions:

1. For the privilege of doing business in this state;

2. For owning or using a part or all of its capital or property in this state; *or*

3. For holding a certificate of compliance with the laws of this state authorizing it to do business here during the calendar year in which the fee for such certificate is payable. Section 5733.01, Revised Code.

By virtue of the federal Constitution, the appellant corporation engages in its admittedly wholly interstate business as of right. In pursuance thereof, it needs no grant, privilege, license or certificate from this state. Cf. *Gibbons* v. *Ogden*, 9 Wheat. 1, 6 L. Ed. 23; *Brown* v. *Maryland*, 12 Wheat. 419, 6 L. Ed. 678; *Robbins* v. *Shelby County Taxing District*, 120 U. S. 489, 30 L. Ed. 694, 7 S. Ct. 592. No ouster from that right or from the state will follow from its failure to seek or secure a privilege or to pay the tax sought to be imposed against it.

Indeed, appellant has not sought, nor has it been granted, any privilege by Ohio. Moreover, for a failure to pay the tax, our courts will not be closed to appellant for the redress of wrongs committed against it nor will its right not to maintain an agent for service of process in this state be forfeited. See, generally, Chapter 1703, Revised Code, and specifically Section 1703.02 thereof.

Therefore, the third occasion for the tax is wholly inapplicable. However, conceding for the moment, but without now deciding, that under *Spector Motor Service, Inc.,* v. *O'Connor, Tax Commr.* (1951), 340 U. S. 602, Ohio may be proscribed from collecting the tax against appellant upon the first occasion (cf. *Northwestern States Portland*

*Cement Co.* v. *Minnesota* [1959], 358 U. S. 450), the second occasion for the tax attempts to equate the need of the taxpayer for the existence of the state to fully utilize its capital employed therein with the need of the state to finance its existence. That occasion recognizes that appellant cannot exercise its admitted federally protected right so to engage in an wholly interstate business in Ohio without some protection, opportunity or benefit conferred by the state, which may, in turn, exert its "power [of taxation] in relation to" the same (*Wisconsin* v. *J. C. Penney Co.*, 311 U. S. 435, 444), provided that the burden of the tax "will be reasonably related to the powers of the state and [be] nondiscriminatory." *Spector Motor Service Inc.* v. *O'Connor, supra* (340 U. S. 602) at page 609.

We need not pause to decide whether this postulate for the tax reaches property or privilege. It is neither. It is the common foundation for the impost against domestic and foreign corporations alike to the extent constitutionally permissible and it does not regulate or condition interstate commerce or the right to its free exercise.

Is the tax "reasonably related to the powers of the state?" This depends upon the *measure* of the tax, which is found in Section 5733.05, Revised Code, and which may be briefly characterized as a "two-fold" apportionment formula. By that section, the value of the issued and outstanding shares of stock of the corporation is divided into two equal parts. One equal part, or half, is multiplied by a fraction whose numerator is the fair value of all the corporation's property owned or used by it in this state, and whose denominator is the fair value of all its property wherever situated, less good will. The other equal part, or half, is multiplied by a fraction whose numerator is the value of the business done by the corporation in this state during the year preceding the date of the commencement of its current annual accounting period, and whose denominator is the total value of its business during said year wherever transacted.

The going-concern value of the corporation in this

state thus is obtained by combining the two separate results and the rate of tax is applied to that value.

"[T]he real question [is] whether what the state is exacting is a constitutionally fair demand by the state for that aspect of the interstate commerce to which the state bears a special relation." *Central Greyhound Lines, Inc.,* v. *Mealey,* 334 U. S. 653, at page 661.

The Ohio apportionment formula "is designed to meet this very requirement." *Northwestern States Portland Cement Co.* v. *Minnesota, supra* (358 U. S. 450), at page 462.

By the conduct of appellant, however, we are unable to determine whether the formula has operated against it so as to "prevent the levying of such taxes as will discriminate against or prohibit the interstate activities or will place the interstate commerce at a disadvantage relative to local commerce." *Central Greyhound Lines, Inc.,* v. *Mealey, supra* (334 U. S. 653), at page 670.

After protracted correspondence, by which the Tax Commissioner attempted to secure compliance with Ohio law, Cooper-Jarrett, without audit, furnished estimated amounts of tax liability as follows: 1961, $225; 1962, $450; 1963, $575; and 1964, $800. The Tax Commissioner assessed the tax accordingly. The taxpayer proffered no written report, as required by Section 5733.02, Revised Code. Thus, the record is silent as to the amount, type, character or value of taxpayer's property or capital employed, used or located, or of its "business done," in this or any other state. It is unknown to what extent its property or capital was "essential" to appellant's transportation of goods in interstate commerce, as claimed. Finally, the manner in which appellant applied the apportionment formula, or if, in fact, it was applied, is unknown.

Perhaps the foregoing supplies the reason for appellant's counsel admitting, in the oral argument of this appeal, that no discrimination against, nor unreasonable burden upon, the interstate commerce pursued by this appellant is shown in the record. As was said in *North-*

*western States Porland Cement Co.* v. *Minnesota, supra* (358 U. S. 450), at page 463: "We cannot deal in abstractions. In this type of case, the taxpayers must show that the formula places a burden upon interstate commerce in a constitutional sense. This they have failed to do."

We have reviewed all the decisions of the Supreme Court of the United States in this troubled legal sea which have been cited by the parties. They represent a wide variety of factual circumstances and statutory phraseology. For example, in *McLeod, Comm. of Rev.,* v. *J. E. Dilworth Co.* (1944), 322 U. S. 327, the "prohibited tax exaction is one beyond the power of the state because the taxable event [the sale] is outside its boundaries." *Memphis Natural Gas Co.* v. *Stone* (1947), 335 U. S. 80, at page 95. In the latter case, however, a franchise tax of $1.50 for each $1,000 value of capital used, invested or employed within the state was held to be constitutionally permissible where the occasion for the tax was held by the highest court of the taxing state not to be the engaging in "interstate commerce as such." *Stone* v. *Memphis Natural Gas Co.,* 201 Miss. 670, 29 So. 2d 268.

On the other hand, the incidence of the tax in *Michigan-Wisconsin Pipe Line Co.* v. *Calvert* (1954), 347 U. S. 157, was the " 'taking' [of gas] into appellants' pipelines * * * solely for interstate transmission and the gas at that time is not only actually committed to but is moving in interstate commerce." Ibid., at page 167. The infirmity of the tax in *Joseph* v. *Carter & Weekes Stevedoring Co.* (1946), 330 U. S. 422, was its direct appropriation of a percentage of gross receipts flowing from wholly interstate and foreign commerce. Similarly, in *Railway Express Agency, Inc.,* v. *Virginia* (1954), [I], 347 U. S. 359, the proscribed tax was *upon* gross receipts earned in the state "on business passing through, into or out of this state" and *for* "the privilege of doing business" therein. The General Assembly of Virginia thereafter adopted a new "license" tax, not on the "privilege of doing business in Virginia" or as a condition precedent to engaging in

interstate commerce in that commonwealth, but measured on "gross receipts, fairly apportioned." See *Railway Express Agency, Inc.,* v. *Virginia* (1959), [II], 358 U. S. 434, at page 438, in which the tax was upheld.

These cases represent more importantly, shifts of direction on the part of that court, which is a normal characteristic of every court of final appeal as its composition changes. Thus, Black and Douglas, JJ., dissented in *McLeod* and *Joseph,* and, joined by Mr. Justice Clark, in *Railway Express* [I] and *Spector,* but concurred in *Memphis Gas,* to which Frankfurter, J., who had concurred in the four former cases, dissented. In *Railway Express* [II] and *Northwestern Cement,* Mr. Justice Clark wrote the opinion concurred in by Black and Douglas, JJ., with Mr. Justice Frankfurter concurring separately in the former and dissenting to the latter.

We conclude that *Northwestern Cement,* which validated a state income tax on a foreign corporation, computed at a nondiscriminatory rate on that portion of its net income from wholly interstate business which was reasonably attributable and fairly apportioned to its business activities within the state, represents the latest and most authoritative statement upon which a further decision of that court may be predicted. See *Roadway Express, Inc.,* v. *Director, Div. of Taxation* (1967), 50 N. J. 471, 236 A. 2d 577.

*Spector,* is technically distinguishable from *Northwestern Cement, Memphis Gas,* and *Railway Express* [II], for the reason that the state supreme court held the tax there imposed to be solely "upon the franchise of corporations for the privilege of carrying on or doing business in the state, whether they be domestic or foreign" (*Spector Motor Service, Inc.,* v. *Walsh, Tax Commr.,* 135 Conn. 37, at 56-57, 61 A. 2d at 98-99), and although formally unreversed, it is now merely *ad hoc.*

The constitutional rule now is, simply stated: If the occasion of the tax is the engaging in wholly interstate activities within the taxing state or if the failure to pay the

tax is cause for ouster from the state, the tax is invalid without regard to its nondiscriminatory features or to the reasonable extent of its burden upon interstate commerce. On the other hand, absent the prohibited features, the test is one of reasonableness.

The decision of the Board of Tax Appeals, being neither unreasonable nor unlawful, is, therefore, affirmed.

*Decision affirmed.*

TAFT, C. J., ZIMMERMAN, MATTHIAS, O'NEILL, HERBERT and BROWN, JJ., concur.