UNITED AIR LINES, INC., APPELLANT, v. PORTERFIELD, TAX
COMMR. OF OHIO, APPELLEE.

[Cite as United Air Lines v. Porterfield (1971),
28 Ohio St. 2d 97.]

(No. 71-120—Decided November 26, 1971.)

*Messrs. Dargusch & Day, Mr. Carlton S. Dargusch, Jr., Mr. Roger F. Day* and *Mr. L. Orin Slagle, Jr.,* for appellant.

*Mr. William J. Brown,* attorney general, and *Mr. David S. Bloomfield,* for appellee.

DUNCAN, J. We affirm the decision of the Board of Tax Appeals.

### The Privilege Concept

R. C. 5745.02, in pertinent part, provides: "* * * an excise tax is hereby imposed upon the privilege of engaging in the business of transporting persons or property by air within this state." Appellant, for one of its contentions, seeks to persuade us to view this language as evi-

dencing an attempt to lay a tax on the bare privilege of engaging in interstate commerce, citing *Spector Motor Service* v. *O'Connor* (1951), 340 U. S. 602, 609. If the scope of the inquiry were so mundane, our rationale would be complete, and we could proceed to consider our next case. However, as often is the case, the simple solution is not available, for it is questionable whether *Spector* is now authoritative support for the proposition that the commerce clause forbids all state taxation on the privilege to engage in interstate commerce. See *Cooper-Jarrett* v. *Porterfield* (1968), 15 Ohio St. 2d 54, 60; *Roadway Express* v. *Director, Div. of Taxation* (1967), 50 N. J. 471, 236 A. 2d 577, appeal dismissed, 390 U. S. 745.

The Supreme Court of the United States has apprised us that the substance of the statute must be examined rather than its form. Chief Justice Warren stated in *American Oil Co.* v. *Neill* (1965), 380 U. S. 451, at page 455:

"When passing on the constitutionality of a state taxing scheme it is firmly established that this court concerns itself with the practical operation of the tax, that is substance rather than form. *Wisconsin* v. *J. C. Penney Co.*, 311 U. S. 435, 443-444; *Lawrence* v. *State Tax Comm'n*, 286 U. S. 276, 280, and cases cited therein. * * *"

Furthermore, on review of statutory acts, a court is bound to give a constitutional rather than unconstitutional construction if one is reasonably available. See *State, ex rel. Dickman,* v. *Defenbacher* (1955), 164 Ohio St. 142; *State, ex rel. Jackman,* v. *Court of Common Pleas* (1967), 9 Ohio St. 2d 159; *American Cancer Society* v. *Dayton* (1953), 160 Ohio St. 114.

Therefore, we examine the substance of R. C. 5745.-02, which provides, in part:

"The tax is as follows:

"(A) Four percent of the receipts derived from transportation which begins and ends within this state;

"(B) Where the transportation does not begin and end within this state, four percent of the receipts derived therefrom attributable to business carried on within this state based on the proportion of the mileage within the

state to the entire mileage over which the persons or property are transported, into or out of the state.''

R. C. 5745.07 provides that, after an assessment the tax becomes conclusive:

"The clerk of courts * * * shall enter a judgment for the state against the person assessed in the amount shown on the entry.

"* * * Execution shall issue upon said judgment upon the request of the commissioner * * *.''

Although a statute uses the terminology that it is taxing a privilege to do business, such a tax is not *ipso facto* unconstitutional in its application to an instrumentality of interstate commerce when the substance of the law lays a tax on the fairly apportioned gross receipts of that activity based on business done within the state. See *General Motors Corp.* v. *Washington* (1964), 377 U. S. 436, where the Supreme Court upheld a tax statute, which read, in part, as follows:

"Section 4. From and after the first day of May, 1935, there is hereby levied and there shall be collected from every person a tax for the act or *privilege* of engaging in business activities. Such tax shall be measured by the application of rates against value of products, gross proceeds of sales, or gross income of the business, as the case may be, as follows: * * *.'' (Emphasis ours.)

We cannot condemn Chapter 5745 solely on the basis of the labeling terminology employed by the General Assembly.

*Payment of the Tax Not a Condition Precedent to Doing Business in Ohio*

Section 8, Article I of the U. S. Constitution, confers upon Congress the power to regulate commerce among the states. Once the Supreme Court of the United States had decided that taxation is a form of regulation,[2] it might

---

[2] In *Freeman* v. *Hewit* (1946), 329 U. S. 249, at page 252, the court stated: "* * * A burden on interstate commerce is none the lighter and no less objectionable because it is imposed by a state under the taxing power rather than under manifestations of police power in the conventional sense, * * *"

have concluded either that the grant of regulatory power to Congress was exclusive, and hence the states could not tax interstate commerce at all, or it might have held the power to tax concurrent in order that the states could regulate and tax in a manner not forbidden by Congress. The Supreme Court of the United States did neither. Instead, it chose a middle course—which has been extremely difficult to follow.[2]

Over the years, the United States Supreme Court's approaches in this field have varied considerably. Professor Hellerstein, in State and Local Taxation (2 Ed. 1961), 158, 164, has stated:

"The present posture of the court is characteristic of its entire history in dealing with Commerce Clause tax issues—the great issues involved reflect sharp differences in approach among the Justices, the leading cases are decided by slim majorities over strong dissent, and both the rationale and holdings are fluid and dynamic, with one decade's minority becoming the next decade's majority, only to be displaced in another decade by a new majority."

Our reading of past decisions of that court therefore necessarily entails some consideration and extrapolation of how the court would today assess the myriad of case law that has developed in this area. Those cases evidence shifts of direction on the part of that court which is a normal characteristic of every court of final appeal as its composition changes. See *Cooper-Jarrett* v. *Porterfield*, *supra* (15 Ohio St. 2d 54).

At the opposite ends of the conceptual spectrum lie the two competing enigmatic propositions that (1) a state may not levy a tax for the privilege of engaging in interstate commerce (see *Spector Motor Service* v. *O'Connor*, *supra* [340 U. S. 602]), and (2) interstate commerce must pay its way in relation to the immediate benefits and protections afforded it by the state. *Postal Telegraph-Cable*

---

[2]See Barnes, State Taxation of Interstate Commerce: Nexus and Apportionment, 48 Marq. L. Rev. 218,

*Co.* v. *Richmond* (1919), 249 U. S. 252; *Western Livestock* v. *Bureau of Revenue* (1938), 303 U. S. 250.

In considering the first proposition, it is obvious that a state may not levy a tax solely on the basis of, and as a condition precedent to, the engaging of interstate commerce within the taxing state. See *Leloup* v. *Port of Mobile* (1888), 127 U. S. 640; *Crutcher* v. *Kentucky* (1891), 141 U. S. 47; *International Textbook Co.* v. *Pigg* (1910), 217 U. S. 91. The Ohio airlines excise tax is not such a tax, since payment of the tax is not a necessary prerequisite for the conduct of interstate flights, and noncompliance is enforceable only by execution as an ordinary money judgment.

In *Northwestern States Portland Cement Co.* v. *Minnesota* (1959), 358 U. S. 450, the court, in discussing the constitutionality of two state corporate income tax levies on the privilege of doing business, commented that since the taxes were to be collected in the ordinary manner the taxes were held to be "not open to the objection that it compels the company to pay for the privilege of engaging in interstate commerce." Likewise, the Ohio airline tax cannot be considered incompatible with the United States Constitution, since it does not condition doing business in the state on the payment of the tax.

### Federal Regulation of Airlines.

Appellant syllogizes, from the fact that the United States Congress has vested the Civil Aeronautics Board with exclusive control over its operation, that Congress has preempted state regulation, and therefore reasons that Ohio cannot levy a tax on a federally granted privilege. We disagree. Certainly, the kind and extent of federal regulation of airlines is more comprehensive than federal regulation of motor carriers or railroads, but federal regulation and the resulting preemption of state regulation do not provide an immunity from state taxation under the commerce clause.

We understand the law to be that even in an area of exclusive federal regulation a state may tax local incidents of interstate commerce because of the benefits con-

ferred by a state on the interstate instrumentality. See *Braniff Airways* v. *Nebraska* (1954), 347 U. S. 590.[4] If the state provides sufficient benefits, the interstate operator

---

[4]At page 594 *et seq.*, the opinion in *Braniff Airways* v. *Nebraska*, *supra* (347 U. S. 590), reads, in part, as follows:

"Appellant argues that federal statutes governing air commerce enacted under the commerce power pre-empt the field of regulation of such air commerce and preclude this tax. * * *

"* * *

"These federal acts regulating air commerce are bottomed on the commerce power of Congress, not on national ownership of the navigable air space, as distinguished from sovereignty. In reporting the bill which became the Air Commerce Act, it was said:

" 'The declaration of what constitutes navigable air space is an exercise of the same source of power, the Interstate Commerce Clause, as that under which Congress has long declared in many acts what constitutes navigable or nonnavigable waters. The public right of flight in the navigable air space owes its source to the same constitutional basis which, under decisions of the Supreme Court, has given rise to a public easement of navigation in the navigable waters of the United States, regardless of the ownership of the adjacent or subjacent soil.' H. R. Rep. No. 572, 69th Cong., 1st Sess., p. 10.

"The commerce power, since *Gibbons* v. *Ogden*, 9 Wheat. 1, 193, has comprehended navigation of streams. Its breadth covers all commercial intercourse. But the federal commerce power over navigable streams does not prevent state action consistent with that power. *Gilman* v. *Philadelphia*, 3 Wall. 713, 729. Since, over streams, Congress acts by virtue of the commerce power, the sovereignty of the state is not impaired. *Oklahoma* v. *Atkinson Co.*, 313 U. S. 508, 534. The title to the beds and the banks are in the states and the riparian owners, subject to the federal power over navigation. Federal regulation of interstate land and water carriers under the commerce power has not been deemed to deny all state power to tax the property of such carriers. We conclude that existent federal air-carrier regulation does not peclude the Nebraska tax challenged here.

"Nor has appellant demonstrated that the Commerce Clause otherwise bars this tax as a burden on interstate commerce. We have frequently reiterated that the Commerce Clause does not immunize interstate instrumentalities from all state taxation, but that such commerce may be required to pay a nondiscriminatory share of the tax burden. And appellant does not allege that this Nebraska statute discriminates against it nor, as noted above, does it challenge the reasonableness of the apportionment prescribed by the statute."

can fairly and reasonably be required to pay for them; otherwise, intrastate carriers would suffer by economic discrimination. R. C. Chapter 5745 makes the tax applicable to intrastate carriers who clearly receive the same or similar local benefits as are received by interstate carriers.

If local state benefits flowing from a state to interstate operators are reasonably related to the amount of the tax, such a relationship justifies the exercise of the power of reasonable state taxation. In such an instance, in our view, there should be no distinction between those interstate operators who must pay the tax for the reason that they may be minimally federally regulated, moderately federally regulated, or completely federally regulated—so long as there is no other aspect of the tax which would deliver it into the region of unconstitutionality. See *Braniff Airways* v. *Nebraska, supra*; *Ott* v. *Mississippi Valley Barge Line Co.* (1949), 336 U. S. 169; *Standard Oil Co.* v. *Peck*, 342 U. S. 382.

### In Lieu Of

R. C. 5733.01, Ohio's corporation franchise tax statute, provides, in pertinent part:

"* * * the tax * * * for foreign corporations shall be [1] for the privilege of doing business in this state, [2] owning or using a part or all of its capital or property in this state, or [3] holding a certificate of compliance with the laws of this state authorizing it to do business in this state during the calendar year in which such fee is payable."

United is subject to the tax provided for by that statute, measured, in part, by the amount of the receipts from airline passenger tickets issued in Ohio for both intrastate and interstate flights. See *American Airlines* v. *Porterfield* (1970), 21 Ohio St. 2d 272.

We mention the franchise tax to clearly reveal that we are mindful that the tax in issue in the instant case is not another franchise tax on the right to do business in Ohio in the corporate form of organization, and that the airline tax is not levied in lieu of other state taxes.

In *Railway Express Agency* v. *Virginia* (1959), 358 U. S. 434, a Virginia franchise tax levied on an agency engaged solely in interstate commerce, which was in lieu of taxes upon all of its other intangible property and rolling stock and which was measured by the gross receipts derived from operations within Virginia, was determined to be constitutional.

The Supreme Court, in the earlier case of *Railway Express Agency* v. *Virginia* (1954), 347 U. S. 359, held unconstitutional a Virginia tax law which was laid on the "privilege of doing business in this state [Virginia]," which tax was not "in lieu of" but in addition to the property tax and denominated as an "annual license tax" upon gross receipts earned in the state.

Comparison of the two *Railway Express Agency* cases, *supra*, reveals that one major change in the tax statute of Virginia deemed proper by the court was that the "in lieu of" feature of the later enacted statute was not present in the earlier statute.

Because of that difference, commented upon by the United States Supreme Court, it is argued by the appellant that one of the indications of constitutionality in this area of state taxation is the presence of an "in lieu of" provision. Appellant further submits that in the absence of an "in lieu of" provision, and in view of the fact that the Ohio scheme of taxation already taxes certain local incidents of airline operation under other provisions of law, the Ohio airlines tax is clearly imposed on the bare privilege of doing business in Ohio. But for the holding in *General Motors Corp.* v. *Washington, supra* (377 U. S. 436), we would agree that the absence of an "in lieu of" feature casts a penumbra of unconstitutionality about the airlines tax. In *General Motors* the Washington tax statute upheld by the Supreme Court had no "in lieu of" feature. It would thus appear that the court has not insisted upon the "in lieu of" feature as a requisite for the constitutionality of a fairly apportioned gross receipts tax. Apparently, a majority of the Supreme Court in the *General Motors*

case, *supra* (Justice Brennan dissented on another ground)[5] has embraced the view stated by Mr. Justice Brennan in the case *Railway Express Agency* v. *Virginia, supra* (358 U. S. 434), at page 447, wherein, concurring, he states:

"To me, the more realistic way of viewing the tax and evaluating its constitutional validity is to make it as what it is in substance, a levy on gross receipts fairly apportionable to the taxing state. * * * The gross receipts taxing structure does not single out this interstate transportation company, or discriminate against it, but rather requires it only to pay its share, at a tax rate comparable to the rates on the gross receipts of other categories of public service corporations, and in fact lower than those on many important ones. To restrict the gross receipts subject to the tax to an amount representing that part of appellant's interstate movements, which takes place within the state, the state has employed an apportionment formula. That formula is not on its face unfair or discriminatory toward interstate commerce or indicative of an imposition on out-of-state activities, and the opinion of the court amply dem-

---

[5]In *General Motors Corporation* v. *Washington* (1964), 377 U. S. 437, Mr. Justice Brennan dissented for the stated reason that he did not view the Washington tax statute under review as being a *fairly apportioned* tax on gross receipts. He stated, at page 450:

"In such a situation, it is the commercial activity within the state, and not the sales volume, which determines the state's power to tax, and by which the tax must be apportioned. While the ratio of in-state to out-of-state sales is often taken into account as one factor among others in apportioning a firm's total net income, see, *e. g.*, the description of the 'Massachusetts Formula' in Note, 75 Harv. L. Rev. 953, 1011 (1962), it nevertheless remains true that if commercial activity in more than one state results in a sale in one of them, that state may not claim as all its own the gross receipts to which the activity within its borders has contributed only a part. Such a tax must be apportioned to reflect the business activity within the taxing state. Cf. my concurring opinion in *Railway Express Agency* v. *Virginia*, 358 U. S. 434, 446. Since the Washington tax on wholesales is, by its very terms, applied to the 'gross proceeds of sales' of those 'engaging within this state in the business of making sales at wholesale,' Rev. Code Wash. 82.04.270, it cannot be sustained under the standards required by the Commerce Clause."

onstrates that this appellant cannot maintain a challenge to the details of its application here. * * * *Canton R. Co.* v. *Rogan,* 340 U. S. 511, 515-516; *Central Greyhound Lines, Inc.,* v. *Mealey,* 334 U. S. 653, 663-664. Cf. *Western Live Stock* v. *Bureau of Revenue,* 303 U. S. 250, 256. In my view, the most compelling reason for affirming the judgment of the Supreme Court of Appeals of Virginia is the application of the principles of these cases here.''

Thus, the fact that the Ohio airlines excise tax is in addition to other taxes that appellant incurs in Ohio does not for that reason render it constitutionally fatal.

Appellant contends ''that the state has assessed United $1.65 in tax for every dollar that the state of Ohio has granted United the privilege to earn.'' Appellant arrives at that amount by including as gross receipts only those receipts derived from charges made for transportation services where the origin and destination of persons and goods were both in Ohio. Erroneously excluded from consideration in its computation are gross receipts from other flights which we believe to be fairly apportionable to Ohio.

The facts presented by appellant do not tend to prove that the tax in question, computed as required by the statute (R. C. 5745.07), when added to those other taxes which it is already subject to, amounts to a sum so confiscatory that the total tax unreasonably burdens its operations.

### Local Incidents.

The lodestone of Mr. Justice Clark's majority opinion in *General Motors Corp.* v. *Washington, supra* (377 U. S. 436), is as follows at page 440:

''A careful analysis of the cases in this field teaches that the validity of the tax rests upon whether the State is exacting a constitutionally fair demand for that aspect of interstate commerce to which it bears a special relation. For our purposes the decisive issue turns on the operating incidence of the tax. In other words, the question is whether the State has exerted its power in proper proportion to appellant's activities within the State and to appellant's

consequent enjoyment of the opportunities and protections which the State has afforded. Where, as in the instant case, the taxing state is not the domiciliary state, we look to the taxpayer's business activities within the state, *i. e.*, the local incidents, to determine if the gross receipts from sales therein may be fairly related to those activities. As was said in *Wisconsin* v. *J. C. Penney Co.*, 311 U. S. 435, 444 (1940), '[t]he simple but controlling question is whether the state has given anything for which it can ask return.' "

In the case at bar, as in *General Motors, supra,* an interstate operator has entered the state and has engaged in activities herein. It maintains offices, equipment and personnel, and solicits and makes sales in this state. Moreover, it enjoys the protection of the government of the state of Ohio.

Admittedly, our heavy reliance on the local-incidents thrust of the *General Motors* case is the prime mover in convincing us of our duty in reaching a decision in the case at bar.

Moreover, we find Mr. Justice Goldberg's pragmatic criticism, leveled at the majority's conceptualization of the application of the local incident rationale, as illuminative of the broad door which that court has apparently opened. He writes, in dissent, at page 456:

"Although the opinion of the court seems to imply that there still is some threshold requirement of in-state activity which must be found to exist before a 'fairly apportioned' tax may be imposed on interstate sales, it is difficult to conceive of a state gross receipts tax on interstate commerce which could not be sustained under the rationale adopted today. Every interstate sale invariably involves some local incidents—some 'in-state' activity. It is difficult, for example, to distinguish between the in-state activities of the representatives here involved and the in-state activities of solicitors or traveling salesmen—activities which this court has held are insufficient to constitute a basis for imposing a tax on interstate sales."

Nevertheless, legal discipline dictates that we follow

the majority decision of the Supreme Court of the United States, and if we have done so in error—our error is not in hiding.

The current status of the problem of state taxation of interstate commerce is well stated in "State Taxation of Interstate Commerce: Roadway Express, the Diminishing Privilege Tax Immunity, and the Movement Toward Uniformity of Apportionment," 36 U. Chicago L. Rev. 186, 203, as follows:

"* * * While there is a theoretical distinction between the privilege of doing business and the privilege of doing business in corporate form, it is a distinction which emasculates the commerce clause protection afforded interstate business which is by and large carried on by corporations. While it may be possible to carry on an interstate business without owning property or employing capital in a state, to limit the protection of the Commerce Clause to those that do not is to limit its protection to only a small minority of businesses. And while there may be a verbal distinction between the tax-immune privilege of doing business and its taxable local incidents, it is questionable whether the Supreme Court will reverse any state court finding that there are sufficient local incidents to justify the distinction and, consequently, the imposition of its privilege tax. If the privilege of doing interstate business has any meaning, its protection certainly cannot be limited to the unincorporated association owning no property in a state where it has no employees.

"* * *

"The fundamental policy issue underlying these developments is whether there remains any justification for continuing to grant the abstract privilege of carrying on interstate business whatever tax immunity it still enjoys. Three considerations in particular suggest that there does not. First, since the Supreme Court approved the imposition of a state's net income tax on an exclusively interstate business in *Northwestern* [358 U. S. 450], there is no longer any economic justification for the perpetuation of the tax

immunity granted the privilege of doing an interstate business, when the tax is measured by net income. Second, the narrow privilege expands and contracts according to semantic variations in state statutes and the ingenuity of state courts. Third, barring any problem of discrimination, multiple burdens, or insufficient nexus, there is no reason why a state should not be permitted to collect revenue from every business which enjoys the benefits and protection which the state affords those enterprises owning local property, employing local personnel, or exploiting the local market. Furthermore, as long as interstate corporations are not subjected to a tax on more than one hundred per cent of their tax base as a result of inconsistent state apportionment formulas and as long as the corporation in question has a sufficient connection with the taxing state to justify tax liability, to continue to provide interstate businesses with tax immunity would tend to put the taxable local business at a competitive disadvantage.

"Taxation of the privilege of doing interstate business would be only the first step in moving towards a more rational reconciliation of conflicting interests: that of the states in obtaining sorely needed revenue from interstate business and that of the nation in protecting the free flow of commerce among the states. While hard questions remain, they lie not in ethereal distinctions but in the extent of the nexus which will be required before interstate business may be subjected to the state taxing power, in the standardization of apportionment formulas in the fifty states, and in the difficulties of administration and compliance costs involved in multi-state taxation."

### Is the Tax Fairly Apportioned?

When a state taxes the gross income or receipts of a multistate enterprise, the state judicial function should be to determine what portion of the income or receipts may fairly be allocable to the taxing state. The function of state courts should be to determine whether the taxing state has assigned to itself only a proportion of the gross income of the enterprise that is commensurate with the activities

there carried on. See *Railway Express Agency* v. *Virginia, supra* (358 U. S. 434); *Railway Express Agency* v. *Virginia, supra* (347 U. S. 359); *Spector Motor Service* v. *O'Connor, supra* (340 U. S. 602); *Cudahy Packing Co.* v. *Minnesota* (1918), 246 U. S. 450; *United States Express Co.* v. *Minnesota* (1912), 223 U. S. 335. That portion of the business fairly attributable to the taxing state should be a proper subject for raising revenue for the state, under whose protection the business is carried on.

The local "in-state" activity may be the proper subject for taxation even though it is an integral part of interstate commerce, so long as the tax does not place interstate commerce at a competitive disadvantage with local commerce. The tax in the case at bar is equally applicable to both interstate and intrastate commerce and does not discriminate against either. On of the major dilemmas that faced the court in *General Motors, supra,* was the failure of the taxing statute to provide for any apportionment of the tax in question, compounded by the appellant-taxpayer's failure to differentiate between sales attributable to in-state and out-of-state activities. In contrast, R. C. 5745.02 fairly provides for apportionment of the tax as follows: "* * * (B) Where the transportation does not begin and end within this state, four per cent of the receipts derived therefrom attributable to business carried on within this state based on the proportion of the mileage within the state to the entire mileage over which the persons or property are transported, into or out of the state."

In contrast, the Washington statute considered in the *General Motors* case provided: "Such tax shall be measured by the application of rates against value of products, gross proceeds of sales, or gross income of the business, as the case may be, as follows:

"(e) Upon every person . . . engaging within this state in the business of making sales at wholesale; as to such persons the amount of tax with respect to such business shall be equal to the gross proceeds of sales of such business multiplied by the rate of one-quarter of one per cent;" See Laws of Wash. 1949, c. 228 at 814-819, *supra.*

If the unapportioned Washington tax was held constitutional, then on this issue, so must be the tax called for by R. C. 5745.02.

It must be remembered that the airlines excise tax only applies to flights related to Ohio. Thus the facts do not indicate that United is subject to a multiple burden arising from another state's levying a similar tax on flights within Ohio based on the proportion of the mileage over which persons or property are transported into or out of this state.

### The Penalty

The Tax Commissioner has the power to promulgate rules concerning the remission of penalties assessed. See R. C. 5745.07. The Commissioner has not chosen to make such rule. We offer no suggestion as to whether he should have made rules; however, the fact that such rules were not fashioned does not *a fortiori* render penalties properly imposed under the statute either unreasonable or unlawful.

We believe the decision of the Board of Tax Appeals to be reasonable and lawful.

*Decision affirmed.*

O'NEILL, C. J., SCHNEIDER and HERBERT, JJ., concur.
CORRIGAN, STERN and LEACH, JJ., dissent.

LEACH, J., dissenting. I feel impelled to state briefly the essentials of my disagreement with the conclusions of the majority.

By its specific terms, the tax in question is purported to be "imposed on the privilege of engaging in the business of transporting persons or property by air in this state."

The conclusion that United's business of transporting persons or property by air in Ohio constitutes engaging in *wholly interstate business* not only is compelled by the record but is conceded by appellee. Thus, if the tax is actually what it purports to be, it necessarily is a tax on the privilege of engaging in interstate commerce.

I believe it fundamental that a state may not lay a tax on the "privilege" of engaging in interstate commerce. This was acknowledged in the majority opinion of Mr. Justice Clark in *General Motors Corporation* v. *Washington* (1964), 377 U. S. 436 (the opinion relied upon by the majority as the principal basis for its conclusions herein), the opinion quoting with approval the statement of that court in *Northwest States Portland Cement Co.* v. *Minnesota* (1959), 358 U. S. at 458 that "[I]t is beyond dispute that a state may not lay a tax on the 'privilege' of engaging in interstate commerce."

The majority opinion adopts an interpretation of the *General Motors* case which I believe to be in error. As I read and understand the *General Motors* case, it holds only that a state is not precluded from imposing taxes "upon other activities or aspects" of an interstate business. Such had already been held in *Spector Motors Service, Inc.,* v. *O'Connor* (1951), 340 U. S. 602, 609.

*General Motors* concerned itself with whether such "other activities or aspects" were present. The majority of the court therein concluded that they were present, stating:

"The tax that Washington levied is measured by the wholesale sales of the respective General Motors divisions in the State. It is unapportioned and, as we have pointed out, is, therefore, suspect. We must determine whether it is so closely related to the local activities of the corporation as to form 'some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax.' *Miller Bros. Co.* v. *Maryland,* 347 U. S. 340, 344-345 (1954). On the basis of the facts found by the state court we are not prepared to say that its conclusion was constitutionally impermissible. *Norton Co.* v *Department of Revenue, supra,* 340 U. S. at 538. Here, just as in *Norton,* the corporation so mingled its taxable business with that which it claims nontaxable that we can only 'conclude that, in the light of all the evidence, the judgment attributing ... [the corporation's Washington sales to its local acti-

vity] was within the realm of permissible judgment. Petitioner has not established that such services as were rendered ... [through in-state activity] were not decisive factors in establishing and holding this market.' Ibid. Although mere entry into a State does not take from a corporation the right to continue to do an interstate business with tax immunity, it does not follow that the corporation can channel its operations through such a maze of local connections as does General Motors, and take advantage of its gain on domesticity, and still maintain that same degree of immunity.''

In the instant case we are not concerned with an intermingling of ''local activities'' and interstate commerce. Instead we are concerned with a business, federally regulated and licensed, and which concededly is *wholly interstate.*

As was stated in *Railway Express Agency, Inc.,* v. *Virginia* (1954), 347 U. S. 359, 364: ''It is not an easy conclusion that the Legislature did not know the actual character of the tax it was laying or that it misconceived what it was taxing.'' As applied to the facts of the instant case, I believe the following language in the 1954 *Railway Express Agency* case to be dispositive:

''We think we can only regard this tax as being in fact and effect just what the Legislature said it was—a privilege tax, and one which cannot be applied to an exclusively interstate business.''

As contrasted with *General Motors,* the Ohio airlines excise tax is directed toward businesses which are exclusively interstate. It is not, as was the tax in *General Motors,* of general application. I would therefore hold such tax to be unconstitutional.

CORRIGAN and STERN, JJ., concur in the foregoing dissenting opinion.