CITY OF LORAIN, Appellee,

v.

DAVIDSON et al., Appellants.

[Cite as *Lorain v. Davidson* (1989), 65 Ohio App.3d 408.]

Court of Appeals of Ohio,
Lorain County.

Nos. 89CA004535 to 89CA004538.

Decided Nov. 29, 1989.

*Mark J. Mihok,* Assistant Prosecuting Attorney, for appellee.

*Spencer Neth,* for appellants.

QUILLIN, Judge.

Defendants-appellants appeal their convictions under a city of Lorain ordinance prohibiting nude dancing in the city of Lorain ("Lorain"). We affirm.

On May 28, 1988, two plain-clothes police officers entered Secrets Night Club in Lorain, Ohio. While inside, the police officers observed Pamela J. Thurman dancing in the center of the club. Thurman's clothing consisted of a bikini top and a "T–Bar." Thurman's buttocks were completely exposed and a three-inch strip of cloth covered her anal region. Thurman also exposed her breasts completely by pulling her bikini top apart. Two other dancers, Gina M. Davidson and Vickie Jane Collins, were observed dancing in similar outfits. The officers also observed Davidson expose her breasts completely by separating her bikini top. After conferring with the Lorain City Prosecutor, the officers charged Thurman, Davidson and Collins with violations of Lorain Codified Ordinances Section 533.21. David Rosenberg, the club manager, was charged with violating Lorain Codified Ordinances Section 533.22. Section 533.21 provides:

"No person shall, while participating in any live act, demonstration, or exhibition, in any public place, place open to the public, or place open to public view:

"(a) Exposes his or her genitals, pubic hair, buttocks, perineum, anal region, or pubic hair region; or

"(b) Exposes any device, costume or covering which gives the appearance of or simulates the genitals, pubic hair, buttocks, perineum, anal region, or pubic hair region; or

"(c) Exposes any portion of the female breast at or below the areola thereof;

"(d) Commits actual or simulated touching, caressing or fondling on the breasts, buttocks, anus or genitals.

"(e) Displays films or pictures depicting acts, a live performance of which would be prohibited by this section.

"(f) Whoever violates this section is guilty of a misdemeanor of the first degree."

Section 533.22 provides:

"(a) No person shall cause, permit, procure, counsel, or assist any person to expose or simulate exposure as prohibited in Section 533.21.

"(b) Whoever violates this section is guilty of a misdemeanor of the first degree."

Section 533.23 specifically exempts a theater which is primarily devoted to theatrical performances from enforcement of the ordinance. Section 533.-01(O) defines "theater" as:

" * * * a building, play house, room, hall or other place having a permanent parcel stage upon which movable scenery and theatrical or vaudeville or similar performances are given and seats so arranged that a body of spectators can have an unobstructed view of the stage."

"Public place" is defined by Section 533.01(N) as:

" * * * a place to which the public or a substantial group of persons has access, and includes, but it is not limited to, highways, transportation facilities, schools, places of amusement, parks playgrounds and hallways, lobbies and other portions of apartment houses and hotels not constituting rooms or apartments designed for actual residence."

The defendants pleaded not guilty to these charges, and filed motions to dismiss claiming that the Lorain ordinances were unconstitutional.

The trial court denied these motions. The defendants then changed their pleas to *nolo contendere.* The trial court found the defendants guilty and sentenced them.

### Assignment of Error

"The Lorain Municipal Court erred in denying the defendants' motion to dismiss, on grounds of unconstitutionality, the charges against and in adjudging the defendants Gina M. Davidson, Vickie Collins, and Pamela J. Thurman guilty of violating Section 533.21 of the Lorain City Ordinances and in adjudging defendant David Rosenberg guilty of violating Section 533.22 of the Lorain City Ordinances."

It is a long-established principle that courts must presume the constitutionality of legislative enactments. *Illinois v. Krull* (1987), 480 U.S. 340, 351, 107 S.Ct. 1160, 1167–1168, 94 L.Ed.2d 364, 376; *Rocky River v. State Emp. Relations Bd.* (1989), 43 Ohio St.3d 1, 10, 539 N.E.2d 103, 111. In construing legislation, the courts are bound to avoid an unconstitutional construction if reasonably possible to do so. *United Air Lines v. Porterfield* (1971), 28 Ohio St.2d 97, 100, 57 O.O.2d 288, 290, 276 N.E.2d 629, 632. The presumption can only be overcome by proof beyond a reasonable doubt that the legislation and the Constitution are clearly incompatible. *Rocky River, supra; State, ex rel. Dickman, v. Defenbacher* (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59, paragraph one of the syllabus.

We must first determine if the Lorain ordinances were constitutionally applied to the defendants. The record establishes that Davidson, Collins

and Thurman engaged in a public nude performance on the premises of an establishment which serves intoxicating liquors, and that Rosenberg counseled and assisted Davidson, Collins and Thurman to engage in such public nude performance. The Twenty–First Amendment to the United States Constitution grants broad powers to the states to regulate the sale of liquor, and this power outweighs any First Amendment interest in nude dancing. Therefore, the state may ban nude dancing in establishments which serve intoxicating liquors. *California v. LaRue* (1972), 409 U.S. 109, 118, 93 S.Ct. 390, 397, 34 L.Ed.2d 342, 352; *Doran v. Salem Inn, Inc.* (1975), 422 U.S. 922, 932–933, 95 S.Ct. 2561, 2568–2569, 45 L.Ed.2d 648, 659–661.

In the case *sub judice,* the Lorain ordinances were constitutionally applied to the defendants. Lorain can validly prohibit nude dancing in establishments where liquor is served.

■ Defendants also claim that the Lorain ordinances are overbroad on their face and, as a result, are unconstitutional. Because the Lorain ordinances were constitutionally applied to defendants, we must determine whether the defendants have sufficient standing to challenge the ordinances as overbroad.

■ The traditional rule is that a person to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the court. *New York v. Ferber* (1982), 458 U.S. 747, 767, 102 S.Ct. 3348, 3359–3360, 73 L.Ed.2d 1113, 1129; *Broadrick v. Oklahoma* (1973), 413 U.S. 601, 610, 93 S.Ct. 2908, 2914–2915, 37 L.Ed.2d 830, 838–839.

" * * * A closely related principle is that constitutional rights are personal and may not be asserted vicariously. * * * These principles rest on more than the fussiness of judges. They reflect the conviction that under our constitutional system courts are not roving commissions assigned to pass judgment on the validity of the Nation's laws. * * * " *Id.* at 610–611, 93 S.Ct. at 2915, 37 L.Ed.2d at 839.

An exception has been carved out of this general rule for challenges claiming that legislation is overbroad on its face and, as a result, violates the First Amendment. *Ferber, supra,* 458 U.S. at 768, 102 S.Ct. at 3360–3361, 73 L.Ed.2d at 1130; *Broadrick, supra,* 413 U.S. at 611–612, 93 S.Ct. at 2915–2916, 37 L.Ed.2d at 839–840; *Dombrowski v. Pfister* (1965), 380 U.S. 479, 486, 85 S.Ct. 1116, 1120–1121, 14 L.Ed.2d 22, 28; *Doran, supra,* 422 U.S. at 933, 95 S.Ct. at 2568–2569, 45 L.Ed.2d at 660; *Schad v. Mt. Ephraim* (1981), 452 U.S. 61, 66, 101 S.Ct. 2176, 2181, 68 L.Ed.2d 671, 678–679; *Young v. American Mini Theatres, Inc.* (1976), 427 U.S. 50, 59–60, 96 S.Ct. 2440, 2446–2447, 49

L.Ed.2d 310, 319–320. The First Amendment overbreadth doctrine is predicated on the sensitive nature of protected expression: " 'persons whose expression is constitutionally protected may well refrain from exercising their rights for fear of criminal sanctions by a statute susceptible of application to protected expression.' " *Ferber, supra,* 458 U.S. at 768, 102 S.Ct. at 3361, 73 L.Ed.2d at 1130; *Gooding v. Wilson* (1972), 405 U.S. 518, 521, 92 S.Ct. 1103, 1105, 31 L.Ed.2d 408, 413. It is for this reason First Amendment attacks on overly broad statutes are allowed even though the conduct of the person making the attack is clearly unprotected and could be proscribed by a law drawn with the requisite specificity. *Ferber, supra,* 458 U.S. at 769, 102 S.Ct. at 3361, 73 L.Ed.2d at 1130; *Dombrowski, supra; Gooding, supra.*

■ The scope of the First Amendment overbreadth doctrine, like most exceptions to established principles, must be carefully tied to the circumstances in which facial invalidation of the statute is truly warranted. *Ferber, supra.* Because of the wide-reaching effects of striking down a statute on its face at the request of one whose own conduct may be punished despite the First Amendment, the First Amendment overbreadth doctrine is "strong medicine" and will be employed with hesitation, and then "only as a last resort." *Ferber, supra; Broadrick, supra,* 413 U.S. at 613, 93 S.Ct. at 2916–2917, 37 L.Ed.2d at 840–841. Consequently, the First Amendment overbreadth doctrine will be applied, and the litigant can assert the rights of third parties, only if the deterrent effect on legitimate expression is both real and substantial, and the legislation is not readily subject to a constitutionally valid limiting interpretation by the court. *Young, supra,* 427 U.S. at 60, 96 S.Ct. at 2447, 49 L.Ed.2d at 320; *Broadrick, supra,* 413 U.S. at 612, 93 S.Ct. at 2915–2916, 37 L.Ed.2d at 840; *Erznoznik v. City of Jacksonville* (1975), 422 U.S. 205, 216, 95 S.Ct. 2268, 2276, 45 L.Ed.2d 125, 135; *Bigelow v. Virginia* (1975), 421 U.S. 809, 816–817, 95 S.Ct. 2222, 2229–2230, 44 L.Ed.2d 600, 608–609. This limitation on the First Amendment overbreadth doctrine is particularly applicable where conduct and not merely speech is involved. *Ferber, supra,* 458 U.S. at 770, 102 S.Ct. at 3361–3362, 73 L.Ed.2d at 1131; *Broadrick, supra,* 413 U.S. at 615, 93 S.Ct. at 2917–2918, 37 L.Ed.2d at 841–842.

■ In determining whether the deterrent effect on valid expression is substantial, it is clear that the mere fact that one can conceive of some impermissible applications of legislation is not sufficient to render it susceptible to an overbreadth challenge. *City Council of the City of Los Angeles v. Taxpayers For Vincent* (1984), 466 U.S. 789, 800, 104 S.Ct. 2118, 2126, 80 L.Ed.2d 772, 783–784. However, where the legislation unquestionably attaches sanctions to protected conduct, the likelihood that the statute will deter that conduct is ordinarily sufficiently great to justify an overbreadth attack.

*Id.* at fn. 19; see *Erznoznik, supra,* 422 U.S. at 217, 95 S.Ct. at 2276–2277, 45 L.Ed.2d at 135–136.

In the case *sub judice,* we hold that the defendants lack standing to assert the right of third parties to challenge the Lorain ordinances. The possibility that the Lorain ordinances will chill protected expression is, at best, minimal. Neither the United States Supreme Court nor any court in the state of Ohio has determined that public nudity is *unquestionably* protected expression under the First Amendment or the Ohio Constitution. See *New York State Liquor Auth. v. Bellanca* (1981), 452 U.S. 714, 716, 101 S.Ct. 2599, 2600–2601, 69 L.Ed.2d 357, 360, citing *Doran, supra,* 422 U.S. at 933, 95 S.Ct. at 2568–2569, 45 L.Ed.2d at 660.

In *Doran,* the court limited its holding to a determination that the district court did not abuse its discretion in granting a preliminary injunction against enforcement of an ordinance prohibiting nude dancing in "any public place." *Id.* at 934, 95 S.Ct. at 2569, 45 L.Ed.2d at 661; *Bellanca, supra.* The Supreme Court has never reached the merits of whether nude dancing is protected expression *per se* outside of theaters and establishments which serve intoxicating liquors.

We conclude that even if nude dancing may be constitutionally protected expression in certain situations, the potential chilling effect on such expression is remote under the Lorain ordinances. The Lorain ordinances specifically exempt theaters from enforcement. Other than nudity in a theatrical production with possible artistic or political merit, which might be constitutionally protected, we have been directed to no other type of public nudity which may be protected expression, and which may be chilled by the Lorain ordinances. Public nudity, be it for the purpose of expression or only mere conduct, in public forums other than "barrooms" and "theaters," is rare at best. The effect of the Lorain ordinances will not chill a substantial amount of public nudity engaged in for the purpose of expression nor will the ordinances chill a substantial amount of public nudity which is only mere conduct. There is less a vital interest in the uninhibited exhibition of material that is on the borderline between pornography and artistic expression than in the free dissemination of ideas of social and political significance. *Young, supra,* 427 U.S. at 61, 96 S.Ct. at 2448, 49 L.Ed.2d at 320–321. Therefore, we hold that the First Amendment overbreadth doctrine is not applicable, and the defendants cannot assert the supposed rights of third persons to challenge the facial validity of the Lorain ordinances.

We adopt the language of the United States Supreme Court by saying: "* * * It is our view that [the ordinance] is not substantially overbroad and that whatever overbreadth may exist should be cured through case-by-case

analysis of the fact situations to which its sanctions, assertedly, may not be applied." *Broadrick, supra,* 413 U.S. at 615–616, 93 S.Ct. at 2918, 37 L.Ed.2d at 842.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

CACIOPPO, P.J., concurs.

BAIRD, J., dissents.

BAIRD, Judge, dissenting.

It seems clear that dancing is a form of expression entitled to constitutional protection, and nudity alone does not cast otherwise protected material outside the mantle of the First Amendment. *Schad v. Mt. Ephraim* (1981), 452 U.S. 61, 66, 101 S.Ct. 2176–2181, 68 L.Ed.2d 671, 678–679. Nudity, without more, is protected expression. *New York v. Ferber* (1982), 458 U.S. 747, 765, 102 S.Ct. 3348, 3359, 73 L.Ed.2d 1113, 1128, fn. 18. Some of the obvious constitutional problems which arise upon any governmental curtailment of such protected expression are obviated when such curtailment is enacted as part of the state's regulatory scheme concerning the dispensing of alcoholic beverages.

In the upholding a New York statute, the United States Supreme Court said this about the state legislature:

"Pursuant to its power to regulate the sale of liquor within its boundaries, it has banned topless dancing in establishments granted a license to serve liquor. The State's power to ban the sale of alcoholic beverages entirely includes the lesser power to ban the sale of liquor on premises where topless dancing occurs." *New York State Liquor Auth. v. Bellanca* (1981), 452 U.S. 714, 717, 101 S.Ct. 2599, 2601, 69 L.Ed.2d 357, 361.

Even if we were to assume that the establishment in question in this case was one in which alcoholic beverages are sold, the city of Lorain has no power to ban or otherwise restrict such sale. The narrowing process engaged in by the majority effectively limits the applicability of the ordinances to an area in which the city of Lorain has no authority.

For this reason, and on the authority of *Doran v. Salem Inn, Inc.* (1975), 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648, I believe this court must reverse the convictions based upon the constitutional invalidity of the ordinances.