OHIO GROCERS ASSOCIATION et al., Appellants,

v.

WILKINS, Ohio Tax Commr., Appellee.

[Cite as *Ohio Grocers Assn. v. Wilkins*, 178 Ohio App.3d 145, 2008-Ohio-4420.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 07AP–813.

Decided Sept. 2, 2008.

146

Chester, Willcox & Saxbe L.L.P., Charles R. Saxbe, Donald C. Brey and Gerhardt A. Gosnell II, for appellants.

Nancy H. Rogers, Attorney General, and Lawrence D. Pratt, Christine T. Mesirow, Alan Schwepe, and Sophia Hussain, Assistant Attorneys General, for appellee.

McGRATH, Presiding Judge.

{¶ 1} Plaintiffs-appellants, Ohio Grocer's Association, Carfagna's Incorporated, CFZ Supermarkets, Inc., Reading Food Services, Inc., and The Sanson Company (collectively "appellants") appeal from the judgment of the Franklin County Court of Common Pleas denying their motion for summary judgment and granting summary judgment in favor of defendant-appellee, William W. Wilkins, in his official capacity as Ohio Tax Commissioner.

{¶ 2} Appellants filed their complaint for declaratory judgment and injunctive relief on February 17, 2006, alleging Ohio's commercial activity tax ("CAT"), codified in R.C. Chapter 5751, effective June 30, 2005, is unconstitutional. Specifically, it is appellants' position that the CAT's provision that imposes a percent tax on annual gross receipts greater than $1 million violates the Ohio Constitution when it is applied to gross receipts derived from the wholesale sale of food and from the retail sale of food for human consumption off the premises where sold.

{¶ 3} Appellants filed a motion for summary judgment on September 15, 2006. On December 5, 2006, appellee filed a memorandum in opposition and cross-motion for summary judgment. Appellants filed a memorandum in opposition and corresponding reply briefs were filed by each party. On August 24, 2007, the trial court issued a decision denying appellants' motion for summary judgment and granting appellee's cross-motion for summary judgment. This appeal followed, and appellants bring two assignments of error for our review:

I.  The trial court erred in granting summary judgment in favor of [the Tax Commissioner] in his official capacity.

II.  The trial court erred in denying summary judgment to plaintiffs.

■ {¶ 4} This matter was decided in the trial court by summary judgment, which under Civ.R. 56(C) may be granted only when there remains no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, that conclusion being adverse to the party opposing the motion. *Tokles & Son, Inc. v. Midwestern Indemn. Co.* (1992), 65 Ohio St.3d 621, 629, 605 N.E.2d 936, citing *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46. Additionally, a moving party cannot discharge its burden under Civ.R. 56 simply by making conclusory assertions that the nonmoving party has no evidence to prove its case. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. Rather, the moving party must point to some evidence that affirmatively demonstrates that the nonmoving party has no evidence to support his or her claims. Id.

{¶ 5} An appellate court's review of summary judgment is de novo. *Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265; *Bard v. Society Natl. Bank* (Sept. 10, 1998), Franklin App. No. 97APE11–1497, 1998 WL 598092. Thus, we conduct an independent review of the record and stand in the shoes of the trial court. *Jones v. Shelly Co.* (1995), 106 Ohio App.3d 440, 445, 666 N.E.2d 316. Consequently, we must affirm the trial court's judgment if any of the grounds raised by the movant at the trial court are found to support it, even if the trial court failed to consider those grounds. See *Dresher,* 75 Ohio St.3d 280, 662 N.E.2d 264; *Coventry Twp. v. Ecker* (1995), 101 Ohio App.3d 38, 41–42, 654 N.E.2d 1327.

{¶ 6} In 2005, the Ohio legislature enacted a series of tax revisions. The component of those revisions at issue here is the new CAT, as codified in R.C. Chapter 5751, effective June 30, 2005. According to appellee, the CAT is designed to replace other business taxes, many of which are being phased out over various time frames.

{¶ 7} R.C. 5751.02 provides:

(A) For the purpose of funding the needs of this state and its local governments beginning with the tax period that commences July 1, 2005, and continuing for every tax period thereafter, there is hereby levied a commercial activity tax on each person with taxable gross receipts for the privilege of doing business in this state. For the purposes of this chapter, "doing business" means engaging in any activity, whether legal or illegal, that is conducted for, or results in, gain, profit, or income, at any time during the calendar year. Persons on which the commercial activity tax is levied include, but are not limited to, persons with substantial nexus with this state. The tax imposed under this section is not a transactional tax and is not subject to Public Law No. 86–272, 73 Stat. 555. The tax imposed under this section is in addition to any other taxes or fees imposed under the Revised Code. The tax levied under this section is imposed on the person receiving the gross receipts and is not a tax imposed directly on a purchaser. The tax imposed by this section is an annual privilege tax for the calendar year that, in the case of calendar year taxpayers, is the annual tax period and, in the case of calendar quarter taxpayers, contains all quarterly tax periods in the calendar year. A taxpayer is subject to the annual privilege tax for doing business during any portion of such calendar year.

(B) The tax imposed by this section is a tax on the taxpayer and shall not be billed or invoiced to another person. Even if the tax or any portion thereof is billed or invoiced and separately stated, such amounts remain part of the price for purposes of the sales and use taxes levied under Chapters 5739. and 5741. of the Revised Code. Nothing in division (B) of this section prohibits a person

from including in the price charged for a good or service an amount sufficient to recover the tax imposed by this section.

{¶ 8} The CAT excludes persons having taxable gross receipts during a calendar year of less than $150,000, and other enumerated entities. The CAT is imposed at a flat rate of $150 for the first $1 million of annual taxable gross receipts (above $150,000), plus, when fully phased in, at the rate of two and sixth tenth mills (0.26 percent) per dollar of taxable gross receipts above $1 million. R.C. 5751.03. "Taxable gross receipts" are defined as gross receipts sitused in Ohio, which includes gross receipts from sales of tangible personal property, e.g., goods, received in this state by a purchaser. R.C. 5751.01(G) and 5751.033(E). "Gross receipts" means "the total amount realized by a person, without deduction for the cost of goods sold or other expenses incurred, that contributes to the production of gross income of the person, including the fair market value of any property and any services received, and any debt transferred or forgiven as consideration." R.C. 5751.01(F).

{¶ 9} It is the portion of the CAT applied to gross receipts from the sale of food to which appellants take exception. Appellants contend that this portion of the CAT runs afoul of two Ohio Constitutional provisions, namely, Section 3, Article XII, and Section 13, Article XII.

{¶ 10} Section 3, Article XII of the Ohio Constitution, as reenacted June 8, 1976, provides:

Laws may be passed providing for:

* * *

(C) Excise and franchise taxes and for the imposition of taxes upon the production of coal, oil, gas, and other minerals; except that no excise tax shall be levied or collected upon the sale or purchase of food for human consumption off the premises where sold.

{¶ 11} Section 13, Article XII of the Ohio Constitution, adopted November 8, 1994, provides:

No sales or other excise taxes shall be levied or collected (1) upon any wholesale sale or wholesale purchase of food for human consumption, its ingredients or its packaging; (2) upon any sale or purchase of such items sold to or purchased by a manufacturer, processor, packager, distributor or reseller of food for human consumption, or its ingredients, for use in its trade or business; or (3) in any retail transaction, on any packaging that contains food for human consumption on or off the premises where sold. For purposes of this section, food for human consumption shall include non-alcoholic beverages. This section shall not affect the extent to which the levy or collection of sales or

other excise taxes on the retail sale or retail purchase of food for human consumption is permitted or prohibited by Section 3(C) of this Article.

{¶ 12} According to appellants, they and all Ohio retail grocers and Ohio food wholesalers must pay a 0.26 percent CAT on all receipts over $1 million annually, including those receipts received from the sale of food for human consumption. Because the CAT uses gross receipts from food sales to determine the tax owed, appellants contend this is equivalent to a sales or transactional tax on the sale or purchase of food that is expressly prohibited by the above outlined Ohio Constitutional provisions.

{¶ 13} To the contrary, appellee contends that this is a franchise tax imposed on the privilege of doing business in Ohio and is not a tax imposed on individual sales. Though the amount of tax owed is measured by gross receipts, appellee argues that that fact does not convert the franchise tax into a transactional one and thereby implicate the constitutional provisions referred to by appellants.

{¶ 14} The trial court concluded that the CAT is a franchise tax, which is a type of excise tax, which is imposed on the privilege of doing business in Ohio, but is not an excise tax levied or collected upon the sale or purchase of food that has constitutional implications. Though measured by taxable gross receipts, which include receipts from the sale or purchase of food, the trial court held that the CAT is not a transactional or sales tax prohibited by Sections 3 and 13, Article XII of the Ohio Constitution.

{¶ 15} "A court's power to invalidate a statute 'is a power to be exercised only with great caution and in the clearest of cases.' Laws are entitled to a 'strong presumption of constitutionality,' and the party challenging the constitutionality of a law 'bears the burden of proving that the law is unconstitutional beyond a reasonable doubt.'" *Columbia Gas Transm. Corp. v. Levin,* 117 Ohio St.3d 122, 2008-Ohio-511, 882 N.E.2d 400, at ¶ 41. *Buckley v. Wilkins,* 105 Ohio St.3d 350, 2005-Ohio-2166, 826 N.E.2d 811, ¶ 18, citing *Yajnik v. Akron Dept. of Health, Hous. Div.,* 101 Ohio St.3d 106, 2004-Ohio-357, 802 N.E.2d 632. Further, "on review of statutory acts, a court is bound to give a constitutional rather than unconstitutional construction if one is reasonably available." *United Air Lines, Inc. v. Porterfield* (1971), 28 Ohio St.2d 97, 100, 57 O.O.2d 288, 276 N.E.2d 629.

{¶ 16} It is undisputed that the statute expressly delineates that the CAT is a tax imposed "for the privilege of doing business in this state" and that the CAT "is not a transactional tax." R.C. 5751.02(A). Regardless, however, of the descriptive vernacular used by the Ohio legislature, appellants contend that to find the true nature of a tax, we must look behind its label, and look instead at its operation. In support of this contention, appellants cite a litany of cases. See,

e.g., *Bank One Dayton, N.A. v. Limbach* (1990), 50 Ohio St.3d 163, 166, 553 N.E.2d 624, citing *Educational Films Corp. of Am. v. Ward* (1931), 282 U.S. 379, 387, 51 S.Ct. 170, 75 L.Ed. 400 ("the nature of a tax must be determined by its operation, rather than by its particular descriptive language"); *Porterfield*, quoting *Am. Oil Co. v. Neill* (1965), 380 U.S. 451, 455, 85 S.Ct. 1130, 14 L.Ed.2d 1 (" '[w]hen passing on the constitutionality of a state taxing scheme it is firmly established that this court concerns itself with the practical operation of the tax, that is substance rather than form' ").

{¶ 17} Further, appellants contend that the Supreme Court of Ohio has repeatedly held that a tax levied upon a business's gross receipts is an "excise tax." *State ex rel. Cleveland v. Kosydar* (1973), 36 Ohio St.2d 183, 184, 65 O.O.2d 401, 305 N.E.2d 803; *E. Ohio Gas Co. v. Limbach* (1986), 26 Ohio St.3d 63, 66–67, 26 OBR 54, 498 N.E.2d 453. Because both Sections 3(C) and 13 of Article XII of the Ohio Constitution prohibit "excise taxes" from being imposed on certain food sales, appellants suggest that the CAT, when applied to gross receipts that include food sales, is clearly unconstitutional.

{¶ 18} To the contrary, appellee argues the CAT is a franchise tax, as it is imposed for the privilege of doing business in Ohio, regardless of whether one looks at the CAT's description or its operation. According to appellee, what the Ohio Constitution prohibits are excise taxes levied on the sale of food in certain situations and does not prohibit a tax, no matter what it is termed, from being imposed on the privilege of doing business within this state. We agree, however, with appellants' and the trial court's assessment that the Supreme Court has repeatedly recognized that a franchise tax is a form of an excise tax. See, e.g., *Wesnovtek Corp. v. Wilkins*, 105 Ohio St.3d 312, 313, 2005-Ohio-1826, 825 N.E.2d 1099 (the Ohio franchise tax is an excise tax for the privilege of doing business in this state); *KeyCorp v. Tracy* (1999), 87 Ohio St.3d 238, 240, 719 N.E.2d 529 (a franchise tax is an excise tax); *Hoover Universal, Inc. v. Limbach* (1991), 61 Ohio St.3d 563, 568, 575 N.E.2d 811 (the franchise tax, an excise tax, can be measured on net income received in a taxable year). Moreover, as defined by the Supreme Court of Ohio in *Saviers v. Smith* (1920), 101 Ohio St. 132, 128 N.E. 269, "[a]n excise [tax] is a tax imposed on the performance of an act, the engaging in an occupation or the enjoyment of a privilege * * *." Id. at paragraph four of the syllabus.

{¶ 19} Section 3(C) of Article XII of the Ohio Constitution provides that laws may be passed providing for "excise and franchise taxes * * *, except that no excise tax shall be levied or collected upon the sale or purchase of food for human consumption off the premises where sold." From this it is gleaned that the intent was not to bar all taxes from being imposed in relation to food transac-

tions, as the exception in 3(C), Article XII does not include a prohibition of franchise taxes, but only a prohibition of excise taxes.

{¶ 20} Thus, while it would appear that the constitutional exceptions in Sections 3(C) and 13 of Article XII were not meant to apply to franchise taxes, judicial interpretation has clearly determined that a franchise tax is a form of an excise tax. As appellants suggest, excise taxes on certain food sales are precisely what the Constitution prohibits.

{¶ 21} Even setting nomenclature aside and focusing on the operation of the CAT, we reach the same conclusion. Though appellee suggests the CAT is a franchise tax and is not equivalent to a sales or transactional tax, by its very operation when applied to gross receipts derived from the sales of food, a transactional tax is precisely what the CAT becomes. This is so because the tax is measured *solely* by gross receipts and is based on aggregate sales, including those from the sales of food. Because the CAT is not based on each transaction or each individual sale, appellee contends that the CAT is constitutional. However, though not based on individual sales at the time they are made, the CAT is merely based on the aggregate of all sales within a specified time frame. If the legislature is prohibited from collecting a tax on the individual sale, it logically follows that the legislature would be prohibited from collecting a tax on the aggregate of those same sales.

{¶ 22} We are cognizant of the Supreme Court of Ohio's decision in *Mut. Holding Co. v. Limbach* (1994), 71 Ohio St.3d 59, 641 N.E.2d 1080, wherein the court noted the following:

A franchise tax, such as that imposed by R.C. 5725.18, is a tax on the privilege of doing business in Ohio. It is not a tax on the property of the paying entity. *Bank One, Dayton, N.A. v. Limbach* (1990), 50 Ohio St.3d 163, 553 N.E.2d 624; *Celina Mut. Ins. Co. v. Bowers* (1965), 5 Ohio St.2d 12, 34 O.O.2d 7, 213 N.E.2d 175. For the privilege of operating a domestic insurance company, Ohio imposes a tax that may be measured either in terms of net worth or premium value. R.C. 5725.18. Measuring tax liability in terms of net worth does not convert a franchise tax into a property tax. See *Internatl. Harvester Co. v. Evatt* (1945), 146 Ohio St. 58, 31 O.O. 546, 64 N.E.2d 53. R.C. 5725.18 is a franchise tax measured by net worth, not a tax on net worth.

Id. at 60, 641 N.E.2d 1080.

{¶ 23} Similarly, in *Bank One Dayton*, the appellants argued that the corporate franchise tax was actually a property tax, while the appellee argued it was a tax *measured* by the value of federal obligations and not levied on the assets themselves. In ruling in favor of the appellee, the court noted that the annual franchise tax was levied on the privilege of doing business in the state and not on income, sales, or receipts. Id. at 167, 553 N.E.2d 624.

{¶ 24} Also in *Bank One Dayton*, the court cited *Werner Mach. Co. v. Dir. of Div. of Taxation* (1956), 350 U.S. 492, 76 S.Ct. 534, 100 L.Ed. 634, wherein the United States Supreme Court approved a tax scheme that included the value of federal bonds in corporation net worth to determine New Jersey's franchise tax. The court in *Werner* upheld the New Jersey Supreme Court's holding that the tax was a franchise tax and not a tax imposed directly on property, even though that property was used to determine the corporation's net worth. "The United States Supreme Court stated that it had 'consistently upheld franchise taxes measured by a yardstick which includes tax-exempt income or property, even though a part of the economic impact of the tax may be said to bear indirectly upon such income or property.'" *Bank One Dayton*, quoting *Werner* at 494, 76 S.Ct. 534, 100 L.Ed. 634.

{¶ 25} However, while in these cases it was deemed permissible to include certain tax-exempt properties and incomes when determining an entity's tax liability, it is important to note that the tax-exempt property or income was not the only measure of tax liability because the tax liability was based on an entity's net worth. Here, the sole factor used to determine tax liability is gross receipts, which is simply a group of individual sales or transactions. A tax-exempt transaction is not just a factor being considered to determine tax liability; rather, before us, a tax-exempt transaction is the *only* factor used to determine tax liability. Though the United States Supreme Court has upheld franchise taxes "measured by a yardstick" that includes tax-exempt income or property, in the case sub judice, the "yardstick" solely comprises transactions that include food sales that are constitutionally prohibited from being taxed.

{¶ 26} Though the CAT purports not to be a transactional tax, in its operation when applied to gross receipts, a transactional tax is in essence what it becomes. We are aware of one Ohio district that has reached a similar conclusion. In *Mosser Constr., Inc. v. Toledo*, Lucas App. No. L–07–1060, 2007-Ohio-4910, 2007 WL 2745222, the construction company brought suit against the city for payment, pursuant to the parties' contract, for a tax imposed on the company under R.C. 5751.02. The city argued that the CAT was an overhead cost that it was not responsible for because it is a tax levied on the privilege of doing business in Ohio and is not a transactional tax, and it is not similar to a sales, consumer, or use tax. The company argued that despite purporting not to be a transactional tax, the CAT functions as an excise tax on gross receipts. The Sixth District Court of Appeals held that the parties' contract provided for a shift of the tax burden to the city in the event of unforeseen changes in the law "if the tax was similar to a sales, consumer, or use tax." Id. at ¶ 36. "Since the amount of tax owed is tied to the amount of a business's gross receipts, the tax is similar to a sale or consumer tax and not an overhead tax." Id. While admittedly *Mosser* was not

presented with the precise issue that is before us, it is important to note that when looking at the CAT's function, the Sixth District also held that despite its language to the contrary, the CAT, when applied to gross receipts, is a transactional tax.

{¶ 27} For these reasons, we conclude that the CAT when applied to gross receipts from the wholesale sale of food and from the retail sale of food for human consumption off premises where sold, operates as, and is, an excise tax levied or collected upon the sale or purchase of food, which is prohibited by Sections 3 and 13 of Article XII of the Ohio Constitution. Accordingly, we sustain appellants' two assignments of error.

{¶ 28} For the foregoing reasons, appellants' two assignments of error are sustained, the judgment of the Franklin County Court of Common Pleas is hereby reversed, and this matter is remanded to that court for further proceedings consistent with law and this opinion.

Judgment reversed
and cause remanded.

BROWN and TYACK, JJ., concur.