House of Seagram, Inc., Appellee, *v.* Porterfield, Tax Commr., Appellant.

(No. 70-732—Decided July 7, 1971.)

98

*Messrs. Topper, Alloway, Goodman, DeLeone & Duffey* and *Mr. R. Brooke Alloway,* for appellees.

*Mr. William J. Brown,* attorney general, and *Mr. David S. Bloomfield,* for appellant.

LEACH, J. The basic issue in this case concerns the interpretation of that portion of R. C. 5733.05 which provides the guidelines for measuring the business done fraction of the Ohio franchise tax of a foreign corporation en-

gaged in sales of tangible personal property. The salient language of R. C. 5733.05 reads, in part:

"* * * (I) To the extent that the value of business done in this state is measured by sales of tangible personal property, it shall, for the purpose of this section and of Section 5733.03 of the Revised Code, mean sales where such property is received in this state by the purchaser. (II) In the case of delivery of tangible personal property by common carrier or by other means of transportation, the place at which such property is ultimately received after all transportation has been completed shall be considered as the place at which such property is received by the purchaser. (III A) Direct delivery in this state, other than for purposes of transportation, to a person or firm designated by a purchaser constitutes delivery to the purchaser in this state and (III B) direct delivery outside this state to a person or firm designated by a purchaser does not constitute delivery to the purchaser in this state, regardless of where title passes or other conditions of sale. * * *" (Sentence numbering added.)

In essence, it is the assertion of appellee, apparently accepted by the Board of Tax Appeals, that, under the language of part (III B) of the statute as set out herein, the common carrier which transported the liquor from New York to Ohio was "a person or firm designated by a [the] purchaser" [Department of Liquor Control]; that the common carrier took "direct delivery outside this state"; that since such delivery "does not constitute delivery to the purchaser in this state, regardless of where title passes or other conditions of delivery" all such sales must be excluded in computing the tax, regardless of whether the sales would otherwise meet the statutory provisions of part (I) or part (II) of the statute.

Thus appellee's argument crystalizes into the contention that where an Ohio purchaser of tangible personal property designates or selects the common carrier which takes delivery of such property outside Ohio, for the purpose of transporting such property to Ohio for the pur-

chaser, the sale of such property can never be included in the computation of business done in this state within the purview of R. C. 5733.05, regardless of the fact that the property is ultimately received by the buyer in Ohio. We reject that contention.

By the terms of part (I) of the statute all sales "where such property is received in this state by the purchaser" are to be included in the tax computation. Part (II)) defines specifically when property is considered to be "received" in this state. Is Ohio "the place at which such property is ultimately received after all transportation has been completed?" If it is, then such is property "received in this state by the purchaser" within the meaning of Part (I).

Part (III B) does not negate part (I) or part (II). By part (III B) it is clear that where direct delivery out of Ohio is made to a person or firm designated by the purchaser, including an Ohio purchaser, *that* particular act of delivery, without more, "does not constitute delivery to the purchaser in this state."

When goods are delivered, outside Ohio, to the purchaser's designee, including a common carrier for transportation into Ohio, such goods have not been delivered "in this state"; yet when they are "ultimately received" in Ohio, "after all transportation has been completed," delivery is complete within the purview of part (II). It is then, but not until then, that the sale would qualify as a sale of tangible personal property "received in this state by the purchaser."

The language on which appellee relies does not negate the other quoted portions of R. C. 5733.05, but rather it compliments them. Part (III B) provides a safeguard applicable to a situation where an Ohio purchaser brings goods through Ohio on their way to some ultimate destination outside Ohio, or where such goods, immediately upon receipt, are shipped to some other state by the purchaser and do not even pass through Ohio. In those instances, clearly there would be no delivery to the purchaser in Ohio,

and consequently the seller would not be doing business in Ohio within the purview of R. C. 5733.05.

We conclude, therefore, that, in computing the Ohio franchise tax levied against a foreign corporation, sales of tangible personal property to an Ohio buyer, delivered by the seller to a common carrier outside Ohio and ultimately received in Ohio after all transportation has been completed, are deemed business done in Ohio and must be included in the numerator of the business done fraction used in computing the tax, pursuant to R. C. 5733.05, re gardless of whether the buyer or the seller has designated the common carrier.

Thus, the Tax Commissioner was correct in including the State Stock Items as sales of tangible personal property in computing the value of business done in this state under the provisions of R. C. 5733.05.

Appellee has also asserted in its brief that if the Tax Commissioner was correct and the Board of Tax Appeals incorrect in the statutory interpretation of R. C. 5733.05, that nevertheless the tax would be unconstitutional and void as constituting a tax on interstate commerce and a tax "without sufficient nexus referable to the state of Ohio."

So far as the claim of interstate commerce is concerned, appellee's assertion is answered by the syllabus of Cooper-Jarrett v. Porterfield (1968), 15 Ohio St. 2d 54, which reads as follows:

"The occasion of the Ohio franchise tax (Section 5733.01 et seq., Revised Code), when levied against a foreign corporation whose business activities within the state are wholly interstate in character, is its capital employed in Ohio, measured by the proportionate share of the average value of its property owned or used, and its business done, within the state; and such occasion for state taxation of interstate commerce is not prohibited by the United States Constitution."

We find ample "nexus" referable to the state of Ohio to support the tax in question. As stated by the

102

United States Supreme Court in *General Motors Corp.* v. *Washington* (1964), 377 U. S. 436, 439, "even interstate commerce must pay its way." There is no showing herein that the tax is discriminatory or that it is not constitutionally apportioned to Ohio activities. See *Northwestern States Portland Cement Co.* v. *Minnesota* (1959), 358 U. S. 450.

For the foregoing reasons, the decision of the Board of Tax Appeals, to the extent it reversed the order of the Tax Commissioner, is reversed.

*Decision reversed.*

O'NEILL, C. J., SCHNEIDER, HERBERT, DUNCAN, CORRIGAN and STERN, JJ., concur.