DIRECTOR OF REVENUE, Respondent Below-Appellant,
v.
THE DIAL CORPORATION Petitioner Below-Appellee.
No. 109, 2008.
Supreme Court of Delaware
Submitted: September 17, 2008.
Decided: December 8, 2008.
Before BERGER JACOBS, and RIDGELY, Justices.
ORDER
HENRY DuPont RIDGELY, Justice.
This 8th day of December 2008, upon consideration of the briefs of the parties and their contentions at oral argument, it appears to the Court that:
(1) Respondent-Appellant Director of Revenue (the "Director") appeals the judgment of the Superior Court reversing the determination by the Director that it could impose the Wholesalers' Gross Receipts Tax (the "Wholesalers' Tax") on the gross receipts of Petitioner-Appellee The Dial Corporation ("Dial") from sales of goods physically delivered in Delaware by Dial. The Director contends that the imposition of an unapportioned tax on Dial's proceeds from sales of goods physically delivered in Delaware by Dial, but title to which passed outside of the State, satisfies the requirements of the Commerce Clause of the Constitution of the United States. We find merit to the Director's argument and reverse.
(2) Dial is a Delaware corporation headquartered in Arizona that manufactures and sells consumer products such as soap.[1] All of Dial's manufacturing activity takes place outside of Delaware. Dial promotes and advertises its products nationally, with a piece of its national budget attributable to Delaware customers.
(3) Dial's customers are generally retail chain stores, such as Wal-Mart, Target, and K-Mart, although it also sells to smaller customers. Generally, the sales force that services larger customers is located near the customer's headquarters, but Dial also maintains general sales offices in Massachusetts, North Carolina, and Arizona to service its other customers. Most Delaware accounts are handled by the Massachusetts sales office staff, some of whom may come into Delaware. However, all sales are invoiced at Dial's Arizona headquarters and customers either wire money to Dial, or send a check to a lock box or one of Dial's facilities in Arizona, Illinois, or Georgia.
(4) Dial generally ships products to its customers from distribution centers or contract manufacturers' ("co-packers'") plants located outside of Delaware. Under its typical sale terms, Dial ships to its customers F.O.B. shipping point, and title to and risk of loss for the goods shipped pass to the purchaser upon delivery to a common carrier, which occurs outside of Delaware.
(5) The price Dial's customers pay includes the cost of shipment to the customer. Dial chooses and pays a common carrier for delivery of the goods to the purchaser. Dial, not its customers, enters into the contract with the carrier, specifies the shipment destinations, and requires the carrier to maintain cargo insurance naming Dial as the insured in case of loss. Further, the carrier must indemnify Dial against claims for damage to the goods carried and Dial is the contact point for communicating shipping delays and is responsible for coordinating a rescheduled delivery.
(6) Between January 2004 and September 2005, Dial paid the Wholesalers' Tax of $41,380 on sales of products that were shipped to locations in Delaware. Dial timely filed for a refund of the tax paid, which the Director of Revenue denied. Dial filed an administrative appeal which was removed to the Superior Court pursuant to 30 Del. C. § 333 on April 12, 2006. Dial moved for summary judgment. On January 29, 2008, the Superior Court granted Dial's motion, holding that, on the stipulated facts, the Wholesalers' Tax violated the Commerce Clause. The Director now appeals that decision.
(7) We review a trial court's construction of a statute de novo.[2] We also review an administrative agency's interpretation of the law de novo. Factual findings of an administrative agency are reviewed to determine whether the findings of fact were supported by substantial evidence on the record.[3]
(8) The Wholesalers' Tax requires any entity "engaged in business in this State as a wholesaler..." to pay a license fee and a tax on the "aggregate gross receipts attributable to sales of tangible personal property physically delivered within this State . . . ."[4] Gross receipts are defined as "total consideration received from sales of tangible personal property physically delivered within this State to the purchaser or purchaser's agent...."[5] The determinative factor is the destination to which the seller delivers (or causes delivery by common carrier of) goods to the purchaser, either inside or outside Delaware, not the contractually agreed upon location of title passage.[6] Dial does not contest that it is a wholesaler or that it receives consideration from the sale of goods ultimately delivered to customers in this State.
(9) The Director contends that the Wholesalers' Tax, as applied to Dial's proceeds from sales of goods physically delivered to customers in Delaware, complies with Article I, § 8 of the United States Constitution (the "Commerce Clause"),[7] even though title to the goods passed outside Delaware. Specifically, this appeal relates to whether the tax violates the "negative" or "dormant" aspect of the Commerce Clause that denies the States the power to exact more than their fair share from interstate commerce than would be commensurate with the burden imposed by that activity.[8]
(10) In Complete Auto Transit, Inc. v. Brady,[9] the United States Supreme Court laid out a pragmatic approach for applying the dormant Commerce Clause to a state's taxation of interstate commerce. A state tax can be sustained against a Commerce Clause challenge when it: "(i) is applied to an activity with a substantial nexus with the taxing State, (ii) is fairly apportioned, (iii) does not discriminate against interstate commerce, and (iv) is fairly related to the services provided by the State."[10] The test is designed to ensure that those engaged in interstate commerce still paid their fair share of the state tax burden.[11] The Superior Court found, and Dial does not contest on appeal, that the first, third, and fourth requirements of the test are satisfied. At issue on this appeal is only whether the Wholesalers' Tax is fairly apportioned.
(11) Consistent with our holding in Ford Motor Co. v. Director of Revenue,[12] the Wholesalers' Tax is fairly apportioned. A fairly apportioned tax "ensure[s] that each State taxes only its fair share of an interstate transaction."[13] In order for a tax to be fairly apportioned, it must be apportioned in a way that is both internally and externally consistent. "Internal consistency is preserved when the imposition of a tax identical to the one in question by every other State would add no burden to interstate commerce that intrastate commerce would not also bear. . . . External consistency, on the other hand, looks not to the logical consequences of cloning, but to the economic justification for the State's claim upon the value taxed, to discover whether a State's tax reaches beyond that portion of value that is fairly attributable to economic activity within the taxing State."[14] The parties have stipulated to the internal consistency of the Wholesalers' Tax.
(12) A challenge on external consistency grounds must do more than show that the "apportionment formula . . . may result in taxation of some income that did not have its source in the taxing State . . . ."[15] Rather, the taxpayer must prove "by `clear and cogent evidence' that the income attributed to the State is in fact `out of all appropriate proportions to the business transacted in that State, or has `led to a grossly distorted result.'"[16] In other words, it must be shown that there is no rational relationship between the tax measure attributed to the state and the contribution of local business activity to the entire value.[17] All that is required of the tax is that the apportionment formula dividing the tax base be reasonable.[18]
(13) In Ford, we explained that in order to avoid extensive judicial lawmaking, the United States Supreme Court has "generally afforded [the states] wide latitude in determining how to divide the tax base to ensure that they tax only their fair share of interstate activity.... [and] has approved several methods ...."[19] After a review of these cases, we determined that the Court's decision in Tyler Pipe Industries v. Washington State Department of Revenue,[20] upholding the constitutionality of a gross receipts tax imposed on the activity of wholesaling based on the proportion of gross wholesale proceeds from sales in the State, is "squarely on point."[21]
In that case, Washington required out-of-state manufacturers to pay a gross receipts tax on the sale of all goods delivered to buyers within the state, regardless of whether title to those goods passed to the buyer at some point outside the state. Delaware's Wholesalers' Tax, like the tax at issue in Tyler Pipe, poses no risk of impermissible multiple taxationit applies only to gross receipts from "sales of tangible personal property physically delivered within this State to the purchaser or the purchaser's agent...." Ford contends this definition permits states in which the vehicle are delivered to the mixing areas and destination ramps to impose the same tax, but this argument overlooks that the dealer is the purchaser and physical delivery to the dealer occurs only in Delaware. Only Delaware has the jurisdiction to tax this separate activity conducted wholly within this State. Therefore, as in Tyler Pipe, the Wholesalers' Tax is not "out of all appropriate proportion to the business transacted" in this state, nor is the result "grossly disproportionate."[22]
(14) Like the activity taxed in Ford and Tyler Pipe, Dial's activity was to deliver products to customers located in Delaware. Dial contends that the sale of products is a "wholly local" activity that cannot be taxed other than by the state where the sale takes place, but this argument overlooks that the Wholesalers' Tax applies only to gross receipts from "sales of tangible personal property physically delivered within this State to the purchaser or the purchaser's agent," for the purpose of engaging in separate and distinct activity of wholesaling within this state.[23] Only Delaware has the jurisdiction to tax this separate activity conducted wholly within this State.[24] Therefore, as in Ford and Tyler Pipe, the Wholesalers' Tax is not "out of all appropriate proportion to the business transacted" in this state, nor is the result "grossly disproportionate." As applied to Dial, the Wholesalers' Tax did not violate the Commerce Clause of the United States Constitution.
NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is REVERSED.
NOTES
[1] The parties entered into an extensive stipulation concerning the factual circumstances upon which this litigation is premised.
[2] Acadia Brandywine Town Ctr., LLC v. New Castle County, 879 A.2d 923, 925 (Del. 2005); see also Lehman Bros. Bank, FSB v. State Bank Comm'r, 937 A.2d 95, 102 (Del. 2007).
[3] Lehman Bros. Bank, 937 A.2d at 102; State v. Worsham, 638 A.2d 1104, 1106 (Del. 1994).
[4] 30 Del. C. 2902(b), (c)(1).
[5] 30 Del. C. § 2901(4)b.
[6] 30 Del. C. § 2901(7). "[T]he term `physically delivered within this State' include delivery to the United States mail or to a common or contract carrier for shipment to a place within this State irrespective of F.O.B. or other terms of payment for delivery. Id.
[7] U.S. CONST., art. I, § 8. It provides, in relevant part: " The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises . . . but all Duties, Imposts and Excises shall be uniform throughout the United States; . . . To regulate Commerce with foreign Nations, and among the several States . . . ." Id.
[8] Or. Waste Sys. Inc. v. Dep't of Envtl. Quality, 511 U.S. 93, 98 (1994).
[9] 430 U.S. 274 (1977).
[10] Id. at 279 & 287.
[11] Id. at 288-89, overruling Spector Motor Serv. v. O'Connor, 340 U.S. 602 (1951)); see also Goldberg v. Sweet, 488 U.S. 252, 260-61 (1989)
[12] No. 257, 2008, at 12-13 (Del. Dec. ___, 2008).
[13] Okla. Tax Comm'n v. Jefferson Lines, Inc., 514 U.S. 175, 184 (1995); Goldberg, 488 U.S. at 260-61.
[14] Jefferson Lines, 514 U.S. at 185.
[15] Container Corp. of Am. v. Franchise Tax Bd., 463 U.S. 159, 169-70 (1983) (quoting Moorman Mfg. Co. v. Bair, 437 U.S. 267, 272 (1978)).
[16] Id. at 170 (quoting Moorman Mfg., 437 U.S. at 274).
[17] Trinova Corp. v. Mich. Dep't of Treasury, 498 U.S. 358, 380 (1991).
[18] Lehman Bros. Bank, 937 A.2d at 112.
[19] Ford, No. 257, 2008, at 9 (citing Moorman Mfg., 437 U.S. at 274; Jefferson Lines, 514 U.S. at 195; Goldberg, 488 U.S. at 261; Container Corp., 463 U.S. at 171; Lehman Bros. Bank, 937 A.2d at 112).
[20] 483 U.S. 232, 251 (1987). The tax at issue defined sales producing taxable gross receipts as "any transfer of the ownership of, title to, or possession of property for a valuable consideration." WASH. REV. CODE § 82.04.040(1). Since at least 1947, Washington has interpreted this statute as establishing a destination test. See Wash. Admin. Code § 458-20-103 (1982) ("For the purpose of determining tax liability of persons selling tangible personal property, a sale takes place in this state when the goods sold are delivered to the buyer in this state, irrespective of whether title to the goods passes to the buyer at a point within or without this state."); TAX COMM'N OF THE STATE OF WASH., RULES RELATING TO THE REVENUE ACT R. 103 (1947).
[21] Ford, No. 257, 2008, at 12-13.
[22] Id.
[23] 30 Del. C. §§ 2901(11)a, 2902(c)(1).
[24] Ford, No. 257, 2008, at 11 (quoting Tyler Pipe, 483 U.S. at 251 ("[T]he activity of wholesalingwhether by an in-state or an out-of-state manufacturermust be viewed as a separate activity conducted wholly within [the state] that no other State has jurisdiction to tax."))