[Cite as *Greenscapes Home & Garden Prods., Inc. v. Testa*, 2019-Ohio-384.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Greenscapes Home and  
Garden Products, Inc.,            :

           :

            Appellant-Appellant,

           :                No. 17AP-593

v.                                     (BTA No. 2016-350)

           :

Joseph W. Testa, Tax Commissioner           (REGULAR CALENDAR)  
of Ohio,            :

            Appellee-Appellee.           :

---

D E C I S I O N

Rendered on February 7, 2019

---

**On brief:** *Brouse McDowell LPA, Terry W. Vincent*, and *Anastasia J. Wade*, for appellant. **Argued:** *Anastasia J. Wade*.

**On brief:** [*Dave Yost*], Attorney General, *Daniel G. Kim*, and *Daniel W. Fausey*, for appellee. **Argued:** *Daniel W. Fausey*.

---

APPEAL from the Ohio Board of Tax Appeals

KLATT, P.J.

{¶ 1} Appellant, Greenscapes Home and Garden Products, Inc., appeals from a decision issued by the Ohio Board of Tax Appeals ("BTA") affirming the assessment of the commercial-activity tax ("CAT") by appellee, Joseph W. Testa, tax commissioner , for revenue Greenscapes receives from the sale of lawn and garden products that are shipped into the state of Ohio. For the reasons that follow, we affirm.

## I.  Factual and Procedural Background

{¶ 2}    Greenscapes is a Georgia corporation.  It does not have any locations in Ohio and does not employ any agents, representatives, or employees in Ohio.  Greenscapes' primary customers are "big-box" retailers such as Walmart, Home Depot, and Lowe's. These retailers have distribution centers located in Ohio.  When an order is placed, Greenscapes is provided with a delivery address.  It prepares a bill of lading but is not responsible for shipping.  The retailer arranges for a carrier to pick up the product at Greenscapes' facility.  Once loaded into the carrier's truck, the product becomes the property of the retailer.  After the product leaves the facility, Greenscapes cannot track the final destination of the product.  In this case, we are concerned with the situsing of the total gross receipts that Greenscapes receives when it sells goods that are shipped by the retailer to Ohio.

{¶ 3}    In April 2012, an auditor for the Ohio Department of Taxation sent Greenscapes a nexus letter.  The letter stated that it appeared that Greenscapes was doing business in Ohio but had not registered or filed for the CAT.  It requested that Greenscapes take one of three actions:   (1) register, file, and remit any taxes owed;  (2) provide information if already registered and filed; or (3) explain why the company should not be required to register for the CAT.   In response, Greenscapes registered for the CAT in May 2012 and filed returns for all quarters of 2011 and 2012.

{¶ 4}    Greenscapes also received notice in 2012 that a CAT audit was to be conducted.  After initially complying and sending some sales information, Greenscapes declined to further participate in the audit.  It also stopped filing CAT reports and paying any taxes to Ohio.  The auditor used the sales information provided to determine the total gross receipts for 2007-2012 and estimated the total gross receipts for 2005 and 2006.  In February 2014, a notice of assessment was issued to Greenscapes in the amount of $64,064 for taxes owed for the period of 2005-2012, plus interest, penalty, and late payment penalty. The department also issued notices of assessment for each quarter of 2013 and 2014 based upon estimated tax owed due to Greenscapes' failure to file a return.

{¶ 5}    Greenscapes filed petitions for reassessment for 2005-2014 and also filed a refund claim for the CAT payments that it made in 2011 and 2012.  Greenscapes contended that it was not liable for the CAT because it did not own the goods shipped to Ohio, was not

responsible for the goods being shipped to Ohio, and Ohio may not be the final destination for the goods as they were sent to Ohio distribution centers. The tax commissioner issued a final determination on December 29, 2015. Relying on R.C. 5751.033(E) and *Dupps Co. v. Lindley*, 62 Ohio St.2d 305 (1980), the tax commissioner found that when a purchaser buys tangible personal goods in Georgia and subsequently ships those goods to a retail location in Ohio, the seller's gross receipts from that sale must be sitused to Ohio. He further noted that Greenscapes failed to produce any evidence that Ohio was not the final destination for the goods. The tax commissioner affirmed the assessments and denied the refund claim.

{¶ 6} Greenscapes filed a timely notice of appeal with the BTA. At the hearing before the BTA, Greenscapes presented evidence and the testimony of Donald Hayes, an executive vice president. The exhibits were examples of orders from retailers such as Lowe's, Home Depot, and Wal-Mart. They reflected that the retailers were billed at their home offices, which are located outside of Ohio, and that common carriers were hired by the retailers to pick up the goods in Georgia and deliver them to Ohio. Hayes testified that Wal-Mart, Home Depot, and Lowe's constitutes 95 percent of its customer sales and that Greenscapes has not successfully marketed to customers outside of these retailers. He acknowledged that Greenscapes had some online presence during the audit period but that it did not have a catalog nor did it advertise its products. Hayes admitted that Greenscapes was aware that retailers like Lowe's have a national presence and that is the reason that Greenscapes likes to work with them. He also confirmed that Greenscapes' products have been shipped to all 50 states and to Canada.

{¶ 7} The tax commissioner presented the testimony of Janelle Rahn, who conducted the audit of Greenscapes. She stated that during the audit Greenscapes had provided a document showing sales by state from 2007 to 2012. Rahn was then contacted by an accountant for Greenscapes, who clarified that the document did not represent sales in Ohio but that it showed sales by ship to destination. Rahn explained that this distinction was immaterial because under the situsing statute the final destination controls where the goods would be sitused. Because the document reflected goods shipped to Ohio, she used that data to determine the tax owed for 2007-2012 and estimated the tax owed for 2005

and 2006. Rahn also testified that she offered to consider additional information showing that Ohio was not in fact the final destination for the goods but did not receive any.

{¶ 8} The BTA agreed with the tax commissioner that the ultimate destination of the products sold by Greenscapes after all transportation has been completed controls where the sales are sitused. It acknowledged that some of the goods that were shipped to Ohio may have ended up in retail locations outside of Ohio but also noted that Greenscapes failed to present any evidence of further transportation. The BTA found that Greenscapes knew its products would be transported to Ohio based on its customers' orders and the bills of lading it provided to the drivers responsible for transportation. The BTA recognized that Greenscapes had raised arguments under the Commerce Clause and Due Process Clause of the U.S. Constitution but declined to make any findings as constitutional challenges are outside of its authority. The BTA found that Greenscapes failed to meet its burden on appeal and affirmed the determination of the tax commissioner.

## II. The Appeal

{¶ 9} Greenscapes appeals the decision of the BTA and assigns the following errors:

> [I.] THE BOARD OF TAX APPEALS ERRED IN HOLDING THAT GREENSCAPES' DELIVERY OF PRODUCT IN GEORGIA TO ITS OUT OF STATE CUSTOMERS' CARRIER OR A COMMON CARRIER HIRED BY ITS CUSTOMERS, WHO THEN SHIPPED THE PRODUCT TO DISTRIBUTION CENTERS LOCATED IN OHIO, WAS ENOUGH CONTACT TO CREATE A SUBSTANTIAL NEXUS BETWEEN GREENSCAPES AND THE STATE OF OHIO SUCH THAT THE STATE OF OHIO COULD ASSESS A COMMERCIAL ACTIVITY TAX AGAINST GREENSCAPES UNDER THE COMMERCE CLAUSE OF THE U.S. CONSTITUTION.
>
> [II.] THE BOARD OF TAX APPEALS ERRED IN CONCLUDING THAT GREENSCAPES HAD THE MINIMUM CONNECTION TO OHIO SUCH THAT OHIO COULD TAX GREENSCAPES UNDER THE DUE PROCESS CLAUSE OF THE U.S. CONSTITUTION.

## III. Scope of the Appeal and Jurisdiction

{¶ 10} In its assignments of error, Greenscapes alleges that the application of the CAT to its sale of goods to retailers based outside of Ohio is unconstitutional and a violation of the dormant Commerce Clause and the Due Process Clause of the U.S. Constitution. In

response, the tax commissioner contends that we lack jurisdiction to consider these claims because Greenscapes failed to (1) properly specify error as to the tax commissioner's final determination or the BTA decision, (2) specify the statute or statutes that are unconstitutional, and (3) preserve the substantial nexus challenge because it was not raised as part of its petition for reassessment. The tax commissioner initially notes that Greenscapes' assignments of error incorrectly state the BTA's holding. He contends that the BTA did not hold that there was a substantial nexus or minimum contact with Ohio. Instead, the BTA affirmed the final determination that the gross receipts for products delivered into Ohio were properly sitused to Ohio. Because the errors specified in the notice of appeal to the BTA and to this court do not actually address the actual holding made in the final determination or in the BTA's decision, the tax commissioner contends that we lack jurisdiction over this matter. The tax commissioner also notes that the only statute referenced in the notice of appeal is R.C. 5717.033(E). That statute is concerned with situsing but does not reference substantial nexus or minimum contact. The tax commissioner argues that Greenscapes has abandoned any claim based on the statute because it did not brief that issue.

{¶ 11} R.C. 5717.02 authorizes the BTA to hear appeals from final determinations of the tax commissioner. The notice of appeal to the BTA "shall contain a short and plain statement of the claimed errors in the determination or redetermination of the tax commissioner * * * showing that the appellant is entitled to relief and a demand for the relief to which the appellant claims to be entitled." R.C. 5717.02(C). In similar fashion, the notice of appeal from the BTA's decision shall set forth "the errors therein complained of." R.C. 5717.04. It is well-established that a notice of appeal filed with the BTA must explicitly and precisely set forth the errors contained in the final determination of the tax commissioner and that any error not specified is not reviewable by either the BTA or an appellate court. *See Lovell v. Levin*, 116 Ohio St.3d 200, 2007-Ohio-6054, ¶ 35. The specificity requirement of R.C. 5717.02 has been interpreted in such a way that if the language in the notice of appeal is so broad and general that it might be employed in nearly any case, then the notice of appeal will be deemed insufficient. *Queen City Valves v. Peck, Inc.*, 161 Ohio St. 579 (1954), syllabus; *Castle Aviation, Inc. v. Wilkins*, 109 Ohio St.3d 290, 2006-Ohio-2420, ¶ 38. These requirements are considered jurisdictional prerequisites for

the BTA and this court on appeal.  *Global Knowledge Training, LLC v. Levin*, 127 Ohio St.3d 34, 2010-Ohio-4411, ¶ 15.

{¶ 12} Whether a constitutional challenge must be raised in the notice of appeal to the BTA depends on the type of challenge involved.  The BTA, as an administrative agency and a creature of statute, is without jurisdiction to determine the constitutional validity of a statute.  *Cleveland Gear Co. v. Limbach*, 35 Ohio St.3d 229 (1988), paragraph one of the syllabus.  If an appellant argues that a tax statute is unconstitutional on its face, the issue may be raised initially in the Supreme Court of Ohio or in the courts of appeals despite not having been previously raised to the BTA.  *Id.* at paragraph two of the syllabus.  However, when a tax statute is challenged on the basis that it is unconstitutional in its application, a court needs a factual record and the proponent of the statute needs notice so that evidence may be submitted in support of the application of the statute.  *Id.* at 232.  The Supreme Court has determined that the BTA is a reasonable forum to develop that record.  *Id.* Therefore, when an issue of whether a tax statute is unconstitutional as applied to a particular set of facts is raised, it must be brought in the notice of appeal to the BTA and the BTA must receive evidence on this issue even though the BTA may not decide the constitutional question.  *Id.* at paragraph three of syllabus.

{¶ 13} In its notice of appeal to the BTA, Greenscapes specified the following errors:

> **FIRST:** The Ohio Supreme Court has repeatedly held that, when construing a statute, a court cannot read words into the statute not found in its text.  According to R.C. 5751.033(E), direct delivery in Ohio, other than for purposes of transportation, to a firm designated by the purchaser is delivery in Ohio.  The second clause of that sentence, however, states that direct delivery outside Ohio to firm designated by the purchaser is not delivery to the purchaser in Ohio and does not include the limitation that the delivery must be "other than for purposes of transportation."  Greenscapes delivers the product to an agent of the Retailers in Georgia for purposes of transportation to Ohio.  Did the Commissioner err in holding that Greenscapes' gross receipts must be sitused in Ohio when the products are directly delivered in Georgia to a firm designated by the Retailers?
>
> **SECOND:** The United States Supreme Court has held that, for a state to impose taxes on an out-of-state entity, there must be a substantial nexus between the out-of-state entity and the state to meet the requirements of the Commerce Clause of the

United States Constitution. The U.S. Supreme Court has further held that a seller whose only contact with the taxing state is by common carrier lacks the required substantial nexus and cannot be taxed by the state. At most, Greenscapes only contact with the State of Ohio is through a common carrier hired and paid for by the Retailers to transport purchased tangible personal property received in Georgia to a distribution center in Ohio. Did the Commissioner err in holding that Greenscapes' delivery of product to a common carrier hired by the Retailers, who then shipped the product into Ohio, was enough contact to create a substantial nexus between Greenscapes and the State of Ohio such that the State of Ohio could assess a Commercial Activity Tax against Greenscapes under the Commerce Clause of the U.S. Constitution?

**THIRD:** The U.S. Supreme Court requires that there be some minimum connection between a state and the entity it seeks to tax to comport with the Due Process Clause of the U.S. Constitution. To be subject to tax under the Due Process clause, there must be demonstrated some efforts on the part of the out-of-state entity are "purposefully directed" toward residents of the state. Greenscapes does not direct any effort towards residents of Ohio and its only connection to the state is its sales of product to out-of-state corporations, who then ship some of the product to distribution centers in Ohio. Did the Commissioner err in concluding that Greenscapes had the minimum connection to Ohio such that Ohio could tax Greenscapes under the Due Process Clause of the U.S. Constitution?

**FOURTH:** A penalty on a tax assessment is inappropriate where the party subject to the assessment relied in good faith that, based on current law, it was not subject to the assessed tax. Greenscapes relied, in good faith, on the text of R.C. 5751.033(E) and on Federal constitutional principles for the conclusion that it was not subject to Ohio's Commercial Activity Tax. Did the Commissioner err in imposing penalties on Greenscapes for the assessed Commercial Activity Tax?

(Mar. 1, 2016 Notice of Appeal at 4-5.)

{¶ 14} When it filed its notice of appeal with this court, Greenscapes eliminated the fourth error regarding the assessment of a penalty. The other three errors are substantially the same except for the last sentence in each error. In the notice of appeal to this court, Greenscapes complained of the following errors:

**FIRST:** The Ohio Supreme Court has repeatedly held that, when construing a statute, a court cannot read words into the statute not found in its text. According to R.C. 5751.033(E), direct delivery in Ohio, other than for purposes of transportation, to a firm designated by the purchaser is delivery in Ohio. The second clause of that sentence, however, states that direct delivery outside Ohio to firm designated by the purchaser is not delivery to the purchaser in Ohio and does not include the limitation that the delivery must be "other than for purposes of transportation." Greenscapes delivers the product to an agent of its customers in Georgia for purposes of transportation to Ohio. The BTA erred in holding that Greenscapes' gross receipts must be sitused in Ohio when the products are directly delivered in Georgia to the customer or an agent designated by its customers.

**SECOND:** The United States Supreme Court has held that, for a state to impose taxes on an out-of-state entity, there must be a substantial nexus between the out-of-state entity and the state to meet the requirements of the Commerce Clause of the United States Constitution. The U.S. Supreme Court has further held that a seller whose only contact with the taxing state is by common carrier lacks the required substantial nexus and cannot be taxed by the state. At most, Greenscapes only contact with the State of Ohio is through a common carrier hired and paid for by some of its customers to transport purchased tangible personal property received in Georgia to a distribution center in Ohio. The BTA erred in holding that Greenscapes' delivery of product to the customer's carrier or a common carrier hired by its customers, who then shipped the product into Ohio, was enough contact to create a substantial nexus between Greenscapes and the State of Ohio such that that State of Ohio could assess a Commercial Activity Tax against Greenscapes under the Commerce Clause of the U.S. Constitution.

**THIRD:** The U.S. Supreme Court requires that there be some minimum connection between a state and the entity it seeks to tax to comport with the Due Process Clause of the U.S. Constitution. To be subject to tax under the Due Process clause, there must be demonstrated some efforts on the part of the out-of-state entity are "purposefully directed" toward residents of the state. Greenscapes does not direct any efforts towards residents of Ohio and its only connection to the state is its sales of product to out-of-state corporations, who then ship some of the product to distribution centers in Ohio. The BTA erred in concluding that Greenscapes had the minimum

> connection to Ohio such that Ohio could tax Greenscapes
> under the Due Process Clause of the U.S. Constitution.

(Aug. 18, 2017 Notice of Appeal at 2-3.)

{¶ 15} Greenscapes did not include in its brief any argument regarding the first error. Instead, it focused on the constitutional challenges.

{¶ 16} Upon review of the notice of appeal filed before the BTA and this court, we conclude that we have jurisdiction to determine this appeal. A court should not engage in a hyper-technical reading of the notice appeal to deny review. *MCI Telecommunications Corp. v. Limbach*, 68 Ohio St.3d 195, 197 (1994). The notices of appeal clearly and distinctly present the questions of whether the application of the CAT to Greenscapes violates the Commerce Clause of the U.S. Constitution due to the lack of a substantial nexus and whether the application of the CAT to Greenscapes violates the Due Process Clause of the U.S. Constitution due to the lack of minimum contact with Ohio. However, as part of its first assignment of error, Greenscapes also argues that Ohio cannot impose a tax on it because Greenscapes receives no benefit, protection, or opportunity in exchange for having to pay the CAT. This argument was not specified in the notice of appeal to the BTA or to this court. Therefore, we shall not consider it.

## IV. Standard of Review

{¶ 17} This appeal concerns the constitutional validity of applying the CAT. The BTA received the evidence at its hearing, but we are tasked with determining the facts necessary to resolve the constitutional questions before us. *Crutchfield Corp. v. Testa*, 151 Ohio St.3d 278, 2016-Ohio-7760, ¶ 16, citing *MCI Telecommunications Corp.* at 198. "To prevail on a constitutional challenge to [a] statute as applied, the challenger must present clear and convincing evidence of the statute's constitutional defect." *State ex rel. Ohio Congress of Parents & Teachers v. State Bd. of Edn.*, 111 Ohio St.3d 568, 2006-Ohio-5512, ¶ 21. Clear and convincing evidence is a degree of proof that " 'will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " *Id.*, quoting *Lansdowne v. Beacon Journal Publishing Co.*, 32 Ohio St.3d 176, 180-81 (1987), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. In determining a constitutional challenge, we are mindful that laws are entitled to a strong presumption of constitutionality. *Ohio Grocers Assn. v. Levin*, 123 Ohio St.3d 303, 2009-

Ohio-4872, ¶ 11.   Our review of the constitutionality of a statute is de novo.   *State v.*
*Watkins*, 10th Dist. No. 09AP-669, 2010-Ohio-4187, ¶ 9, citing *State v. Cook*, 83 Ohio St.3d
404 (1998).

## V.  The CAT

{¶ 18} The CAT was enacted as part of a major reform of Ohio's tax code.
Am.Sub.H.B. No. 66, 151 Ohio Laws, Part II, 2868.   For many businesses such as
manufacturing and distribution companies like Greenscapes, the CAT replaced the
corporate-franchise and personal-property taxes, which were gradually phased out.   *See*
*Beaver Excavating Co. v. Testa*, 134 Ohio St.3d 565, 2012-Ohio-5776, ¶ 23; *Ohio Grocers*
at ¶ 6.   The CAT levies a tax on each person with taxable gross receipts for the privilege of
doing business in Ohio.   R.C. 5751.02(A).   For purposes of the CAT, "person" includes
companies and "any other entities."   R.C. 5751.01(A).   A person who has less than $150,000
of taxable gross receipts in a calendar year does not have to pay the CAT.   R.C. 5751.01(E)(1).
If a person's taxable gross receipts is $1,000,000 or less, the CAT owed is a flat $150.   R.C.
5751.03(B)(1).   After that, the amount of tax owed is determined by a formula set forth in
R.C. 5751.03 and is based on the amount of taxable gross receipts.   "[G]ross receipts" is "the
total amount realized by a person, without deduction for the cost of goods sold or other
expenses incurred, that contributes to the production of gross income of the person,
including the fair market value of any property and any services received, and any debt
transferred or forgiven as consideration."   R.C. 5751.01(F).   One example of "gross receipts"
is the "[a]mounts realized from the sale, exchange, or other disposition of the taxpayer's
property to or with another."   R.C. 5751.01(F)(1)(a).

{¶ 19} To fall within the purview of the CAT, the gross receipts must be taxable in
Ohio.   "Taxable gross receipts" are "gross receipts sitused to this state under section
5751.033 of the Revised Code."   R.C. 5751.01(G).   As pertinent to Greenscapes,

> [g]ross receipts from the sale of tangible personal property
> shall be sitused to this state if the property is received in this
> state by the purchaser. In the case of delivery of tangible
> personal property by motor carrier or by other means of
> transportation, the place at which such property is ultimately
> received after all transportation has been completed shall be
> considered the place where the purchaser receives the
> property. For purposes of this section, the phrase "delivery of
> tangible personal property by motor carrier or by other means

of transportation" includes the situation in which a purchaser accepts the property in this state and then transports the property directly or by other means to a location outside this state. Direct delivery in this state, other than for purposes of transportation, to a person or firm designated by a purchaser constitutes delivery to the purchaser in this state, and direct delivery outside this state to a person or firm designated by a purchaser does not constitute delivery to the purchaser in this state, regardless of where title passes or other conditions of sale.

R.C. 5751.033(E).[1]  The tax commissioner determined that Greenscapes was required to pay the CAT because it had gross receipts sitused to Ohio based on the sale of its products which were delivered to Ohio distribution centers.

## VI.  Substantial Nexus and the Commerce Clause

{¶ 20}  In its first assignment of error, Greenscapes challenges the application of the CAT to its sale of goods to retailers who ship those goods to Ohio distribution centers.  It argues that these transactions are insufficient to create a substantial nexus under the Commerce Clause of the U.S. Constitution.

{¶ 21} The U.S. Constitution provides that Congress shall have the power "[t]o regulate Commerce * * * among the several States."  U.S. Constitution, Article I, Section 8. The Commerce Clause does not expressly place prohibitions on "the several States" in any specific terms, but the Supreme Court of the United States has interpreted "a negative implication in the provision since the early days." *Kentucky Dept. of Revenue v. Davis*, 553 U.S. 328, 337 (2008).  Thus, that court has "long interpreted the Commerce Clause as an implicit restraint on state authority." *United Haulers Assn., Inc. v. Oneida-Herkimer Solid Waste Mgt. Auth.*, 550 U.S. 330, 338 (2007). This concept of "negative implication" and "implicit restraint" is known as the "negative" or "dormant" Commerce Clause.

{¶ 22} The dormant Commerce Clause is "driven by concern about 'economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors.' " *Kentucky Dept. of Revenue* at 337-38, quoting *New Energy Co.  v. Limbach*, 486 U.S. 269, 273-74 (1988). The dormant Commerce Clause thus is an economic policy to prohibit states from erecting barriers to free trade across state

---

[1] The CAT situsing statute is also consistent with situsing provisions from other states.  *See, e.g.,* Ala.Code 40-18-31.2; Ariz.Rev.Stat.Ann. 43-1146; Cal.Rev. & Tax Code 25135; Va.Code Ann. 58.1-415.

borders and from enacting laws that favor local enterprises at the expense of out-of-state businesses. *Boston Stock Exchange v. New York State Tax Commr.*, 429 U.S. 318, 328-29 (1977).

{¶ 23} When the state law is in the form of a tax, the Supreme Court of the United States has broadly held that a tax is invalid under the dormant Commerce Clause if it taxes a " 'transaction or incident more heavily when it crosses state lines than when it occurs entirely within the State.' "  *Chemical Waste Mgt. v. Hunt*, 504 U.S. 334, 342 (1992), quoting *Armco Inc. v. Hardesty*, 467 U.S. 638, 642 (1984).  It is a bedrock principle " 'that a State may not tax value earned outside its borders.' " *Corrigan v. Testa*, 149 Ohio St.3d 18, 2016-Ohio-2805, ¶ 17, quoting *Allied-Signal, Inc. v. Dir., Div. of Taxation*, 504 U.S. 768, 777 (1992).  But, interstate commerce is not immune from state taxation.  *Colonial Pipeline Co. v. Traigle*, 421 U.S. 100, 108 (1975).  " 'It was not the purpose of the commerce clause to relieve those engaged in interstate commerce from their just share of state tax burden even though it increases the cost of doing the business.' " *Id.*, quoting *Western Live Stock v. Bur. of Revenue*, 303 U.S. 250, 254 (1938).  A tax provision will not run afoul of the commerce clause if (1) the activity taxed has a substantial nexus with the taxing state, (2) the tax is fairly apportioned to reflect the extent of commercial activity within the taxing state, (3) the tax does not discriminate against interstate commerce, and (4) the tax is fairly related to benefits provided by the state. *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279 (1977).  In its notice of appeal to the BTA and to this court, Greenscapes challenged only the substantial-nexus factor.

{¶ 24} Greenscapes contends that it has no nexus with Ohio to justify the imposition of the CAT.  Initially, Greenscapes' argument appeared to be twofold, asserting that it lacked a nexus because it does not have a physical presence in Ohio and because its transactions with retailers occurred entirely outside of Ohio.  In its reply brief, however, Greenscapes disavowed any argument that substantial nexus requires a physical presence inside the taxing state.  Greenscapes' concession that a physical presence in the taxing state is not required for purposes of imposing the CAT is consistent with Ohio law.  The Supreme Court of Ohio rejected requiring a physical presence as a necessary condition for imposing a tax obligation under the CAT.  *Crutchfield,* 151 Ohio St.3d 278, 2016-Ohio-7760, at ¶ 42.  It declined to extend the physical-presence standard set forth in *Quill Corp. v. North Dakota*,

504 U.S. 298 (1992), beyond sales and use taxes. *Crutchfield* at ¶ 47. It reasoned that as long as the tax on the privilege of doing business in Ohio had an adequate quantitative standard to satisfy the nexus requirement of the Commerce Clause, a physical presence was not needed. *Id.* at ¶ 42.

{¶ 25} If there was any doubt after *Crutchfield* that a physical presence was not required under the Commerce Clause for imposing a tax obligation under the CAT, the Supreme Court of the United States put that to rest in *South Dakota v. Wayfair*, ___ U.S.___, 138 S.Ct. 2080 (2018). That court acknowledged, "Each year, the physical presence rule becomes further removed from economic reality and results in significant revenue losses to the States." *Id.* at 2092. It determined, "*Quill's* physical presence rule intrudes on States' reasonable choices in enacting their tax systems. And that it allows remote sellers to escape an obligation to remit a lawful state tax is unfair and unjust." *Wayfair* at 2095. The court overruled *Quill*, concluding the physical presence rule was unsound and incorrect. *Wayfair* at 2099.

{¶ 26} In arguing that it has no nexus to Ohio because its transaction with customers occur entirely outside the state, Greenscapes relies on *McLeod v. J.E. Dilworth Co.*, 322 U.S. 327 (1944). In that case, the Supreme Court of the United States held that an Arkansas sales tax on a Tennessee corporation violated the Commerce Clause. The Tennessee corporation had no business location in Arkansas and the solicitation of orders was taken by a traveling salesperson domiciled in Tennessee. *Id.* at 328. The orders were approved in Tennessee and title to the goods passed upon delivery to the carrier in Tennessee. *Id.* The Supreme Court stated that "a tax on an interstate sale like the one before us and unlike the tax on the enjoyment of the goods sold, involves an assumption of power by a State which the Commerce Clause was meant to end." *Id.* at 330. Greenscapes highlights its factual similarities to *McLeod*. It points out that it is a Georgia corporation that solicits orders and sells products to retail customers headquartered in Georgia, North Carolina, and Arkansas. According to Greenscapes, the orders are received in Georgia and billed to the retailers' headquarters. The title to the goods passes in Georgia. Based on the foregoing, Greenscapes concludes that the transactions underlying the gross receipts at issue occur entirely outside the state of Ohio.

{¶ 27} Greenscapes' reliance on *McLeod* is misplaced. *McLeod* was decided at a time when the Supreme Court had held that state taxes on interstate commerce were per se unconstitutional. *See Gen. Trading Co. v. State Tax Commr.*, 322 U.S. 335, 338 (1944) (holding that "no State can tax the privilege of doing interstate business"). In *Complete Auto*, the U.S. Supreme Court overruled this line of cases and upheld a privilege on doing business tax on gross receipts from interstate commerce. *Complete Auto*, 430 U.S. at 289. Further, Greenscapes ignores that its retail customers have a presence in Ohio and that they purchased goods for delivery to their Ohio distribution centers. Greenscapes knew that its products were destined for Ohio at the time the orders were placed. R.C. 5751.033(E) provides that the situs of the gross receipts from the sale of tangible personal property is the place at which such property is ultimately received after all transportation has been completed. In this case, the evidence established that that place is Ohio.

{¶ 28} The Supreme Court of Ohio reviewed a substantially similar situsing statute, R.C. 5733.05(B)(2)(c), and found that it provided "ample nexus" for the corporate franchise tax. *House of Seagram, Inc. v. Porterfield*, 27 Ohio St.2d 97 (1971). In *House of Seagram*, the Ohio Department of Liquor Control purchased liquor from the House of Seagram, which was located in New York. A common carrier designated by the state of Ohio picked up the liquor in New York and delivered it to a warehouse in Ohio. The tax commissioner issued an assessment of a franchise tax against the House of Seagram. As part of the computation of the tax owed, the tax commissioner included the sale of liquor to the state of Ohio. The House of Seagram argued that the sale of liquor originated outside of Ohio and should not be included in the business-done formula. The Supreme Court of Ohio disagreed. It concluded that pursuant to R.C. 5733.05, sales of tangible personal property, delivered by the seller to a common carrier outside Ohio and ultimately received in Ohio after all transportation has been completed, are deemed business done in Ohio and must be included in the formula for computing the franchise tax. *House of Seagram* at 101. The House of Seagram argued that if the tax commissioner's interpretation of R.C. 5733.05 was correct, then that tax was an unconstitutional tax on interstate commerce. *House of Seagram* at 101. The court rejected this argument as well. It found that there was "ample 'nexus' " to support the tax in question and that there was no showing that the tax was discriminatory or disproportionate. *Id.*

{¶ 29} It does not appear that situsing the gross receipts from the sales at issue in Ohio will result in double taxation to Greenscapes.  According to Ga.Code Ann. 48-7-31(d)(1)(A)(i),

> [gross] receipts shall be deemed to have been derived from business done within this state only if the receipts are received from products shipped to customers in this state, or from products delivered within this state to customers. In determining the gross receipts within this state, receipts from sales negotiated or effected through offices of the taxpayer outside this state and delivered from storage in this state to customers outside this state shall be excluded[.]

In a case with facts similar to this one, the Georgia Supreme Court determined that gross receipts from carpet sales by a Georgia company to out-of-state customers who took possession of the goods in Georgia for transport and resale out of state were not taxable in Georgia.  *Strickland v. Patcraft Mills, Inc.,* 251 Ga. 43, 43-44 (1983).  In interpreting Ga.Code Ann. 48-7-31, the court applied a destination rule for determining the taxable nexus of gross receipts.  *Strickland* at 45.  It reasoned that a destination test was easy to apply, was not subject to taxpayer manipulation, and recognized the contribution by a consumer state to the realization of corporate income.  *Id.*  The Georgia Supreme Court concluded that because Patcraft's sales were destined for markets outside of Georgia, the gross receipts were properly allocable to other states for corporate income tax purposes, regardless of the place of transfer of possession of the goods, or the manner by which the merchandise arrived at its eventual destination.  *Id.* at 45-46.

{¶ 30} In *Wayfair,* the Supreme Court of the United States did not question South Dakota's authority to tax the transaction because it involved the sale of tangible personal property for delivery into the state.  *Wayfair*, 138 S.Ct. at 2092.  " 'It has long been settled' that the sale of goods or services "has a sufficient nexus to the State in which the sale is consummated to be treated as a local transaction taxable by that State." ' "  *Id.*, quoting *Oklahoma Tax Comm. v. Jefferson Lines, Inc.*, 514 U.S. 175, 184 (1995).  " 'Generally speaking, a sale is attributable to its destination.' "  *Id.* at 2092-93, quoting 2 Trost & Hartman, *Federal Limitations on State and Local Taxation*, Section 11:1, at 471 (2d Ed.2003).

{¶ 31} Situsing the gross receipts to the destination forum, rather than the place where title passes is a common method for apportioning sales in interstate commerce to a particular forum state. For instance, Delaware's wholesalers' gross receipts tax requires any entity "engaged in business in this State as a wholesaler" to pay a license fee and a tax on the aggregate gross receipts attributable to sales of tangible personal property physically delivered within Delaware. Del.Code Ann., Title 30, Section 2902(b) and (c)(1). Dial Corporation challenged the imposition of the wholesalers' tax. *Dir. of Revenue v. Dial Corp.*, 962 A.2d 916 (Del.2008). Dial manufactured its consumer products outside of Delaware. In general, Dial's customers were larger retailers such as Wal-Mart, Target, and K-Mart, and all sales were invoiced at Dial's Arizona headquarters. Dial shipped the products to its customers from facilities located outside of Delaware, and title passed to the purchasers upon delivery to a common carrier, which also occurred outside of Delaware. Dial argued that its sales were a "wholly local" activity that could not be taxed in Delaware. The Delaware Supreme Court disagreed. It noted that for purposes of the wholesalers' tax the determinative factor is the destination to which the seller delivers the goods to the purchase and not the location where title passed. Because the tax applied to activity that occurred within Delaware—the delivery of tangible personal property to a purchaser—the Delaware Supreme Court concluded that the wholesalers' tax did not violate the Commerce Clause. The uniform holding of courts in other states employing similar provisions to R.C. 5751.033(E) is that the destination of the goods, and not their delivery point, is dispositive. *See Indiana Dept. of Revenue v. Miller Brewing Co.*, 975 N.E.2d 800 (Ind.2012); *Texaco, Inc. v. Groppo*, 215 Conn. 134 (1990); *Dept. of Revenue v. Parker Banana Co.*, 391 So.2d 762, 763 (Fla.App.1980); *Olympia Brewing Co. v. Commr. of Revenue*, 326 N.W.2d 642, 648 (Minn.1982); *Pabst Brewing Co. v. Dept. of Revenue*, 130 Wis.2d 291, 296 (1986).

{¶ 32} Based on the foregoing, we conclude that R.C. 5751.033 creates a nexus with Ohio by situsing gross receipts to this state because the tangible personal property involved was ultimately received in this state. To satisfy the *Complete Auto* test, however, there must be a substantial nexus.

{¶ 33} In *Wayfair*, the Supreme Court stated that the substantial nexus prong of the *Complete Auto* test " 'is established when the taxpayer [or collector] "avails itself of the substantial privilege of carrying on business" in that jurisdiction.' " *Wayfair*, 138 S.Ct. at

2099, quoting *Polar Tankers, Inc. v. Valdez*, 557 U.S. 1, 11 (2009). It concluded that the economic and virtual contacts the taxpayer had with South Dakota were sufficient to establish a nexus. Because South Dakota applied its act only to those sellers who delivered more than $100,000 of goods into the state or who engaged in 200 or more separate transactions, the court reasoned that quantity of business could not have occurred unless the seller availed itself of the substantial privilege of carrying on business in South Dakota. *Id.*

{¶ 34} R.C. 5751.02(A) expressly provides that "persons with a substantial nexus with this state" are subject to the CAT. A person has a "substantial nexus with this state" when the person (1) owns or uses a part or all of its capital in Ohio, (2) holds a certificate of compliance to do business in Ohio, (3) has a bright-line presence, or (4) otherwise has a nexus so that the person can be required to remit tax under the U.S. Constitution. R.C. 5751.01(H). A "bright-line presence" is established when a person (1) has property with an aggregate value of $50,000 in Ohio; (2) has payroll in Ohio of at least $50,000; (3) has taxable gross receipts of at least $500,000; (4) has at least 25 percent of its total property, total payroll, or taxable gross receipts in Ohio; or (5) is domiciled in Ohio. R.C. 5751.01(I). In *Crutchfield*, the Supreme Court of Ohio held that the $500,000 sales-receipts threshold complies with the substantial-nexus requirement of the *Complete Auto* test. *Crutchfield*, 151 Ohio St.3d 278, 2016-Ohio-7760, at ¶ 52. Such a quantitative standard makes it reasonable to hold a remote seller liable for the CAT. *Id.* at ¶ 53.

{¶ 35} In this case, there is no dispute that Greenscapes has satisfied the $500,000 sales-receipts threshold for the tax period at issue. Based on the holding of *Crutchfield*, Greenscapes has a substantial nexus with Ohio. We therefore conclude that application of the CAT to Greenscapes did not violate the dormant Commerce Clause. The first assignment of error is overruled.

## VII. Minimum Contact and the Due Process Clause

{¶ 36} In the second assignment of error, Greenscapes argues that the application of the CAT to its sales violates the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. Although Greenscapes may market its goods to big-box retailers who may buy and distribute those goods to Ohio, Greenscapes contends that it has done nothing to purposefully direct sales to Ohio.

{¶ 37} The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution states that "[no] State [shall] deprive any person of life, liberty, or property, without due process of law."  It guards against a state exceeding its jurisdiction to tax by establishing a twofold test.  First, there must be a definite link or a minimum connection between the state and the person, property, or transaction that Ohio seeks to tax; second, the income attributed to the state for tax purposes must rationally relate to values connected with the taxing state. *T. Ryan Legg Irrevocable Trust v. Testa*, 149 Ohio St.3d 376, 2016-Ohio-8418, ¶ 64.  " 'Due process centrally concerns the fundamental fairness of government activity,' while the Commerce Clause reflects 'structural concerns about the effects of state regulation on the national economy.' " *Corrigan v. Testa*, 149 Ohio St.3d 18, 2016-Ohio-2805, ¶ 17, citing *Quill*, 504 U.S. at 312.  The Due Process Clause is considered a lower constitutional barrier for the imposition of a tax than the Commerce Clause.  *See Tyler Pipe Industries, Inc. v. Washington State Dept. of Revenue*, 483 U.S. 232 (1987) (holding that a tax may be consistent with due process and yet unduly burden interstate commerce).

{¶ 38}  It is well-settled that a business need not have a physical presence in a state to satisfy the demands of due process. *Burger King Corp. v. Rudzewicz*, 471 U. S. 462, 476 (1985).  In *Wayfair,* the Supreme Court of the United States commented, " 'it is an inescapable fact of modern commercial life that a substantial amount of business is transacted . . . [with no] need for physical presence within a State in which business is conducted.' *Quill* itself recognized that '[t]he requirements of due process are met irrespective of a corporation's lack of physical presence in the taxing State.' " *Wayfair*, 138 S.Ct. at 2093, quoting *Quill* at 308.  A state may tax the income of a non-resident which is fairly attributable either to property located in the state or to events or transactions which occur there.  *Internatl. Harvester Co. v. Wisconsin Dept. of Taxation*, 322 U.S. 435, 441-42 (1944).

{¶ 39} Greenscapes argues that it does not have minimum contacts with Ohio.  It asserts that it simply sells its products to retailers who then deliver those products to distribution centers in Ohio.  It claims to have done nothing to purposefully avail itself or further its business in Ohio.  Greenscapes also contends that it receives no benefit from this

state for the payment of the CAT because it does not maintain property or funds in this state, does not hire employees in Ohio, and does not transport the product to Ohio.

{¶ 40} In response, the tax commissioner argues that Greenscapes has knowingly and consciously sold its products to retailers with a large national presence. As a result of its efforts, Greenscapes had annual gross receipts of $3.8 million to $5.7 million from the sale of tangible personal property that was delivered to Ohio from 2007 to 2014. The tax commissioner asserts that Greenscapes is utilizing the protections and benefits of Ohio by taking advantage of the opportunity to earn income through the sale of goods shipped to Ohio.

{¶ 41} Minimum contacts are satisfied where a defendant has "purposely avail[ed] itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). A defendant's placement of goods into commerce "with the expectation that they will be purchased by consumers in the forum State" may indicate purposeful availment. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980). Greenscapes, relying on *Asahi Metal Industry Co. v. Superior Ct. of California*, 480 U.S. 102, 112-13 (1987), contends that passive knowledge that its goods may end up in Ohio is insufficient to satisfy the "purposefully directed" standard of the Due Process Clause. *Asahi* is a products liability case in which a plurality of the Supreme Court of the United States articulated a "stream of commerce plus" theory that would require additional conduct directed to the forum state besides the placement of goods into the stream of commerce to satisfy the Due Process Clause. Federal courts, however, have found a defendant who sells products to a national or regional retailer for resale to ordinary, individual consumers in the forum state has purposefully availed itself of the privilege of doing business in the forum state. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566-67 (Fed.Cir.1994) (finding personal jurisdiction because defendant shipped the accused product through a regional retailer for resale in the forum state); *Schwanger v. Munchkin, Inc.*, Fed.Cir. No. 99-1049 (Oct. 7, 1999) (finding personal jurisdiction because "Muchkin purposefully shipped the accused product into Ohio through Wal-Mart, an established distribution channel"); *Innovation Ventures, LLC v. Custom Nutrition Labs., LLC*, 946 F. Supp.2d 714 (E.D.Mich.2013) (finding personal jurisdiction because defendant sold accused product to Walgreens for resale in Michigan); *Original*

*Creations, Inc. v. Ready Am., Inc.*, 836 F.Supp.2d 711 (N.D.Ill.2011) (finding personal jurisdiction because defendant sold the accused product to regional distributors for resale in Illinois); *Hanamint Corp. v. Alliant Marketing Group, LLC*, 481 F.Supp.2d 444 (M.D.N.C.2007) (finding personal jurisdiction because defendant contracted with Wal-Mart to sell accused products in North Carolina).

{¶ 42} The income that Greenscapes earns from the sales at issue is made possible because there is a market for its goods in Ohio. *See Internatl. Harvester*, 322 U.S. at 444. Based on the systemic sale of tangible personal property that is delivered to Ohio, we conclude that there is a definite link between Ohio and Greenscapes. Greenscapes has purposefully taken advantage of the distribution ability of national retailers and knows that its products are shipped to Ohio. We therefore conclude that the application of the CAT to Greenscapes does not violate the Due Process Clause of the Fourteenth Amendment. The second assignment of error is overruled.

{¶ 43} Having overruled both assignments of error, we affirm the decision of the Board of Tax Appeals.

*Judgment affirmed.*

TYACK and DORRIAN, JJ., concur.

_____